[Sac. No. 1137.   Department One.—September 13, 1905.]

## MARY A. KEYES and W. B. KEYES, Appellants, v. JOHN B. MEYERS, Respondent.

DEED—DELIVERY IN ESCROW—CLAIMS OF CREDITOR—CONDITIONAL AGREE-
MENT—TITLE NOT PASSED.—Where a deed in favor of a creditor of
the grantor was delivered in escrow, under instructions that it
was not to be delivered to either party during life without the
consent of the other, and that after death of the grantor it should
be delivered to the grantee, and a few days thereafter it was agreed
in writing that the creditor should pay the expenses of the grantor
during life and funeral expenses, provided that upon payment of
all legal claims of the creditors the grantor might demand and
repossess the deed, and it was delivered to the grantee after the
death of the grantor; *held*, that there was no effectual delivery
of the deed, or passage of title; that the grantor did not part
with all control over the deed or the title, and that the intention
was that the deed should not take effect as a present conveyance.

APPEAL from a judgment of the Superior Court of Cala-
veras County.   C. V. Gottschalk, Judge.

The facts are stated in the opinion of the court.

W. A. Dower, and Nicol & Orr, for Appellants.

Ira Hill Reed, and Robert C. Owens, for Respondent.

SHAW, J.—The plaintiff Mary A. Keyes sued the defend-
ant to annul a deed executed to defendant by John M. Lind-
say, purporting to convey to him certain real property, and
to quiet her title thereto.   W. B. Keyes is joined as plaintiff
solely because he is the husband of his co-plaintiff.   Defend-
ant in his answer prayed that he be adjudged the owner of
the property.   The court made its findings and gave judg-
ment for the defendant.   Plaintiffs appeal, and present the
evidence by a bill of exceptions, the appeal having been
taken within sixty days after the rendition of the judgment.
The case presents the question whether or not the deed of
Lindsay to the defendant was ever effectively delivered to
him.

In substance, the facts as found by the court are as follows:
On January 15, 1895, Lindsay, being the owner of the real
property, and being indebted to Meyers, in consideration of

said indebtedness made, signed, and duly acknowledged the execution of a deed purporting to convey to Meyers the said property, and deposited said deed with W. H. Steffler, with verbal instructions from both Lindsay and Meyers, made at the time, that Steffler should not deliver the same to either party during their lifetime, without an order from the other, and that after the death of Lindsay he should deliver it to Meyers. Afterwards, on January 21, 1895, the two parties made and executed the following written agreement:—

"This agreement, made this 21st day of January, 1895, between John B. Meyers, of Angels Camp, Calaveras County, state of California, and John Lindsay, of the same place, witnesseth:

"That whereas, the said John Lindsay has executed a deed, now in escrow, and deposited January 15th, 1895, in the hands of William Steffler, county treasurer of Calaveras County, to one third of that certain quartz mine situated in the Angels Mining District, Calaveras County, state of California:

"Now, therefore, the said J. B. Meyers hereby agrees to provide food, clothing and proper medical attendance and medicine in case of sickness, and in case of death to pay all funeral expenses, caused by the death of said John Lindsay, and to pay all the necessary expenses the said Lindsay may incur as long as he, the said John Lindsay, may live.

"Provided, however, that upon the payment of all legal claims held by the said John B. Meyers against him, he, the said John Lindsay, shall have the right to demand and repossess the said deed above referred to from William Steffler, without any costs whatever.

"It is further agreed that payment of all demands in favor of John B. Meyers may be paid either to him or to Mrs. J. B. Meyers, his wife."

On September 25, 1898, Lindsay wrote to Steffler a letter, which Steffler received, which was as follows:—

"That deed that is placed in your hands in escrow between J. B. Meyers and J. M. Lindsay, of Angels Camp, I will ask you as a friend to hold it and not to allow it to be opened by Meyers or any one, without my consent. As it is a life contract I feel safer with it in your hands than any man I know of in Calaveras County.    "(Signed)   J. M. LINDSAY."

On November 12, 1900, the day of his death, Lindsay exe-cuted a deed purporting to convey the same property to the plaintiff, Mary A. Keyes, for the consideration of fifty dol-lars. On November 13, 1900, Steffler delivered to Meyers the deed deposited with him by Lindsay and Meyers on January 15, 1895. Meyers did not pay the funeral expenses of Lind-say, nor has he been asked or requested to do so, but he has been always ready to do so, upon being informed of the amount. He furnished goods and supplies for the mainte-nance and support of Lindsay, and paid his living expenses at all times when called upon or requested to do so. On October 19, 1897, Lindsay had become indebted to Meyers, apparently on this account, in the sum of one thousand dol-lars, which he never paid.

We think there was no legal or effectual delivery of the deed. The essential requisites of a valid delivery in cases of the class here presented were carefully considered and settled by this court in *Bury* v. *Young*, 98 Cal. 446, [35 Am. St. Rep. 186, 33 Pac. 338], and *Kenney* v. *Parks*, 125 Cal. 146, [57 Pac. 772]. In *Bury* v. *Young* it was held that where the owner of land signs and acknowledges a deed and delivers it to a third person, with instructions not to record it, but to deliver it to the grantees upon the grantor's death, the grantor thereupon parting with all dominion over the deed, and re-serving no right to recall it or alter its provisions, or to have any further interest in the property, except to hold the use until his death, the delivery by such third person after the grantor's death is valid, and that such conveyance passes the title upon the first delivery, subject to the grantor's life estate. The court, distinguishing the case from others of contrary import, says: "In every case where the deed has been declared invalid by reason of failure of delivery, it will be found that the grantor reserved some rights over the instrument; that he failed to part with all control and do-minion over it; that upon the happening of some event, or contingency, or condition, he had the right, if so disposed, to reach out and take it from the possession of the depositary. . . . The essential requisite to the validity of a deed trans-ferred under circumstances as indicated in this case, is that when it is placed in the hands of the third party, it has passed beyond the control of the grantor for all time. That question

is determined by the grantor's intention in the matter, and his intention in making the delivery is a question of fact, to be solved by the light of all the circumstances surrounding the transaction.'' In *Kenney* v. *Parks* the deed was held invalid. A husband and wife each owned separate real property, and each executed to the other a deed of his and her property respectively, and delivered the same simultaneously to a third person, with directions that upon the death of either, leaving the other surviving, the deed executed by the deceased spouse should be duly recorded for the benefit of the survivor, and with the understanding that the deed of the survivor should thereupon become ineffectual and should be returned to the grantor therein. The husband died and the wife claimed his property under the deed executed by him. The court held that the deeds, though designated by the parties as escrows, were in no legal sense escrows, there being nothing to be performed by either grantee as a condition · precedent to the delivery and taking effect of the deed (Civ. Code, sec. 1057), but that they were either direct grants or no deeds whatever, and that ''The all-controlling fact in this case, which defeats plaintiff's claim, is that when the deeds were made and delivered to the cashier of the bank the respective grantors did not absolutely part with all future dominion and control over them, but, upon the contrary, the actual intention and understanding of each grantor was that upon the death of the other the survivor should take back his own deed, and that no title should vest under it.'' (p. 150.) (See, further, *Wittenbrock* v. *Cass,* 110 Cal. 6, [42 Pac. 300]; *Howlin* v. *Castro,* 136 Cal. 610, [69 Pac. 432]; *Conale* v. *Copello,* 137 Cal. 24, [69 Pac. 698].)

Applying these principles to the case at bar, it is clear that there was no delivery of the deed. Even under the verbal instructions given to Steffler at the date of the deed, · Lindsay did not absolutely part with all dominion over the · deed or the title. Upon procuring an order from Meyers he · still retained the right to withdraw the deed. If any title whatever was to be vested in Meyers prior to such withdrawal, it could not be revested in Lindsay by the mere re-' delivery of the deed to him, or otherwise than by a grant from · Meyers. (Civ. Code, sec. 1058.) · Hence, although they did · not say so, in terms, the intention of both parties manifestly

was, that upon the order of Meyers the deed might be withdrawn by Lindsay, and in that event should be of no force whatever, and that the title was then to be in Lindsay, complete and perfect, without any reconveyance by Meyers. This state of the title would·have continued down to the moment of Lindsay's death. It follows that there could have been no intention that the deed was to have any present effect on the title, so long as it was subject to this contingency,—that is to say, during Lindsay's life. In that view of the case, Steffler, in holding the deed, must be considered as the mere agent of Lindsay to deliver it after his death, if not otherwise disposed of in his lifetime, and such agency would be revoked by Lindsay's death. (*Devol* v. *Dye,* 123 Ind. 326, [24 N. E. 246].)

But it is immaterial to the decision of the case what would be the effect of the original agreement and instructions to Steffler. It may be conceded that if the effect of such original agreement was, as contended by appellants, to divest Lindsay of all future control over the deed, it could not be changed without Meyer's consent, and possibly not without his consent in writing. But this limitation is fully met and obviated by the agreement of January 21, 1895. That agreement was in writing and was executed by Meyers, and consequently it was as effectual to qualify his title or right to the property as any other instrument in writing, and the effect of the agreement made at that time was precisely the same upon the deed and upon the title as if it had been made at the time the deed was originally deposited. This agreement specifically declares that Lindsay should have the right to withdraw the deed at any time upon payment of all legal claims held against him by Meyers. No provision is made in that event for a reconveyance by Meyers. Evidently none was considered necessary and the intention was that the deed should not take effect as a present conveyance. Lindsay, therefore, did not part with all control either over the deed or the title, and the case comes within the rule established in *Kenney* v. *Parks,* 125 Cal. 146, [57 Pac. 772].

The letter of September 25, 1898, does not in the least change the legal effect of the former transaction. The rule prevailing in some jurisdictions, that where a grantor who retains power to regain possession of the deed dies without

doing so, and the deed is delivered in pursuance of the origi-
nal directions accompanying its deposit, such delivery upon
the grantor's death is valid and effectual to pass the title,
has not been followed in this state. (*Bury* v. *Young*, 98 Cal.
451, [35 Am. St. Rep. 186, 33 Pac. 338]; *Canale* v. *Copello*,
137 Cal. 24, [69 Pac. 698].)   The judgment is not supported
by the findings or by the evidence in the case.

The judgment is reversed.

Angellotti, J., and Van Dyke, J., concurred.

A petition for a hearing in Bank was filed, and the follow-
ing opinion was rendered thereon on the 13th of October,
1905:—

THE COURT.—The petition for rehearing is denied.   We
do not intend by anything said in the opinion to declare that
upon the going down of the *remittitur* the court below may
not permit the defendant to amend his pleadings by filing a
cross-complaint to have his debt against the deceased John
M. Lindsay declared a lien on the property, or to amend his
answer to show the want of equity in plaintiff until the debt
due defendant, if any, be paid.

Dated this thirteenth day of October, 1905.