[Civ. No. 985.   Third Appellate District.—September 19, 1912.]

CHARLES A. KING and JOSEPH E. GALLAGHER, as Executors of the Last Will of MARTIN F. FRAGLEY, Deceased, Respondents, v. SARAH FRAGLEY and OLLIE V. RAWSON, Appellants.

DEED—RECONVEYANCE BY WIFE TO HUSBAND—UNCONDITIONAL DELIVERY —SUPPORT OF FINDINGS.—Where a husband had conveyed certain property to his wife, and upon a readjustment of his affairs requested of her a reconveyance of such property, with which request she complied, and executed and unconditionally delivered to him a deed thereof, findings in an action to quiet the title of her husband's estate, as against a subsequent claim made by her for such property, that the title to the property was in the husband, are held to be supported by the evidence.

ID.—REVOCATION OF POSSESSION OF DEED AFTER DELIVERY IMMATERIAL TO TITLE.—The fact that the wife, after the unconditional delivery of the deed to the husband, subsequently reclaimed the possession of the deed, and placed it in a box, which she retained in her possession, is immaterial, and cannot affect the title so vested in her husband. No subsequent act of the grantor can affect the title vested in the grantee.

APPEAL from a judgment of the Superior Court of Alameda County.   Wm. H. Waste, Judge.

The facts are stated in the opinion of the court.

Jas. H. Creely, and M. L. Rawson, for Appellants.

Geo. E. De Golia, and John O. Quinlan, for Respondents.

BURNETT, J.—This was an action to quiet title and, as stated by appellant, the only question raised upon the trial was whether or not a certain deed executed on the second day of November, 1909, by Sarah Fragley to her husband, Martin Fragley, operated as a valid transfer and whether it was delivered or not. The trial court found that said deed was prepared by an attorney employed by the grantee, "and on November 2, 1909, at the said home of Fragley and his wife, and in the presence of John C. Quinlan, Charles A. King, one of the executors named in the will, and Hamilton Bauer, a notary public and attorney at law, said Sarah executed said deed, acknowledged the same before said notary public, and then and there freely and voluntarily physically handed to, and delivered to, said Martin Fragley her said deed, so executed and acknowledged, conveying back to him said 'San Leandro property,' saying to him in substance, 'Here, papa, is the deed you want.' . . . That it was intended by said Sarah Fragley when she delivered to her said husband, Martin F. Fragley, on November 2, 1909, said deed of November 2, 1909, conveying back to said Martin said 'San Leandro property,' that said deed was to be an absolute conveyance by her to her said husband of said property with the full knowledge and agreement on her part that such deed was to convey back to her husband said 'San Leandro property,' to the end that said will was to remain unchanged, and she was to receive from her husband's estate upon his death property and money to the value of about $9,000, and no more. . . . That said deed of November 2, 1909, was on said day delivered by said Sarah to her said husband absolutely and unconditionally.''

The only question for us to determine is whether those findings are supported by the evidence, and of this, after reading the transcript, we can entertain no kind of doubt.

Hamilton A. Bauer, the notary public who took the acknowledgment of the grantor of said deed, testified: "She signed it right in front of me, in my presence. I never saw it before the time she signed that, but she executed that right in my presence. I asked her if she acknowledged that. She said yes. I put my certificate on. I filled in the written part. I put the seal on, too. I had a pocket seal which I put on." Being asked whether or not there was any conversation at that time and place between Mr. and Mrs. Fragley, or between

Mrs. Fragley and any of the parties, that this deed was to be operative as a will of Sarah Fragley, he replied: "I did not hear anything of that sort. As I recollect, Mr. Quinlan told him he had made out a will for him." He was asked the following question: "Q. This deed, this paper ever referred to as being a will, or to act or operate as a will? A. No, sir, I don't think there was anything of that sort. Q. State whether or not at that time and place there was any conversation or remark concerning this deed, so that it would have no force or effect if Mrs. Fragley outlived her husband. A. I did not hear anything of that sort, no, sir."

Mr. Charles A. King, a witness who was present at the time, testified as follows: "I think I was invited on the day before the execution of the deed by Mr. Quinlan, who was Mr. Fragley's attorney, to be at Mr. Fragley's home at 11 o'clock on the morning of November 2d, on this date of the execution of the deed. I was present at that time and that deed was signed by Mrs. Fragley and acknowledged by Mr. Bauer on that morning. The deed was handed to Mr. Fragley at the request of Mr. Quinlan, who asked her to make delivery to Mr. Fragley of that deed. She did so. A general conversation was taking place and Mrs. Fragley obtained the box, which was a wooden box but had the appearance of a tin box, in which he kept some insurance policies and other private papers, deeds, notes and mortgages, and so forth. He dropped the deed into the box and Mrs. Fragley removed it, I think, to their bedroom, in which it was generally kept in the closet there." Being asked the question: "At the time that Mrs. Fragley handed the deed to her husband, did she say anything to him?" he answered: "There might have been something said about 'Here is the paper, Papa.' She generally called him 'Papa.' Or, 'Here is the deed.' She did that at the request of Mr. Quinlan, as I remember distinctly. He wanted an absolute tender of the deed to Mr. Fragley. Q. You mean by 'tender' physical delivery? A. Yes, sir; physical delivery. The deed having been drawn, as I understood, for that purpose, the deed having been drawn and executed for that purpose."

John C. Quinlan, a witness for plaintiffs, testified as follows: "I prepared this deed at the request of both Mr. and Mrs. Fragley, Sarah Fragley and her husband, Martin F.

Fragley. The request was made probably a week or so before I prepared this deed. Mr. Fragley asked Mrs. Fragley whether or not she would be willing to deed back to him the Fair Oaks street property and the San Leandro property. She said yes, she would be willing to do anything that he wanted her to do. As far as she was concerned, she was quite willing to take what was given her in the will which had been already prepared and drawn and executed by Mr. Fragley. In the presence of Mrs. Fragley, Mr. Fragley asked her whether or not she would not deed back to him the Fair Oaks street property and the San Leandro property; she said: 'Yes, Papa, I will do whatever you want to do. If you want it done that way, all right.' I said to Mrs. Fragley that she had been given certain legacies and bequests in the will. I had already read to her the will. She says that was all right, that was all she wanted. At the time of the execution of the deed I was present, Mrs. Fragley was present, Mr. King was present and Mr. Hamilton Bauer was present; Mr. Fragley, also. I don't think there was anyone else present. I went into the house, as had been arranged by Mr. and Mrs. Fragley the evening before. I went into the house with the notary, Mr. Bauer, on the morning of November 2d. Mr. Fragley was sitting in the front windows in an arm-chair. He had been sick for some time before that. He was sick at that time. He was sitting up, I think, with a blanket thrown around him. I introduced Mr. Bauer to him as the notary. I believe Mr. King was inside at the time. He shook hands with him. I told Mr. Fragley that we were all ready to have the papers signed up, referring to the deeds. Now, Mrs. Fragley was present, I am quite sure, during that conversation, because she opened the door for me, I believe, when I was going in. She was in the parlor with me, with the rest of us, during that conversation. I then produced the deeds, and again, I told Mrs. Fragley she was getting the Fair Oaks street property under the will together with $3,000. She said all right, and signed this deed. As soon as the deed was signed by Mrs. Fragley, it was handed by Mrs. Fragley over to Mr. Fragley in my presence. I believe I requested Mrs. Fragley to deliver the deed to her husband. In fact, I am sure I did. Q. What did she say, if anything, when she handed it to him? A. She said, 'Here it is.' I believe that is the way she handed

the deed over to her husband. 'Here it is, Papa.' I think that is the way she said it. Q. At any of the times you have spoken of, was there any objection of any kind or nature by Mrs. Fragley against the executing and delivery of that deed? A. No, sir. There was absolutely no protest whatever made by Mrs. Fragley. Everything was freely and voluntarily done, without any duress, fraud, menace or undue influence by any person whatsoever. Q. Did you at any time prior to the execution of this deed explain to Mrs. Fragley why the deed was drawn and should be executed? A. I believe I explained to Mrs. Fragley. I know I explained to Mr. Fragley, and I believe I explained to Mrs. Fragley that if she was satisfied with the Fair Oaks street property and the $3,000 given her in the will, that unless this deed was given back to Mr. Fragley, that she could come in if she wanted to or was so disposed, and secure her widow's share in addition to this property. Q. In order to make an adjustment of matters after the will had been prepared, you told her the reason why Mr. Fragley wanted this deed by which she conveyed back to him the San Leandro property? A. Exactly, in order to see that the provisions in the will, as Mr. Fragley wanted it, were carried out. In other words, he wanted Mrs. Fragley to get the Fair Oaks street property and $3,000. He did not want her to get any more. Q. That was explained by you to her or by him in your presence? A. Yes. Q. At the time the deed was signed and acknowledged and handed to Mr. Fragley, what was Mrs. Fragley's mental and physical condition, as you observed it? A. Mrs. Fragley's mental and physical condition was very well, as far as I could see. I had been at Mr. Fragley's house on several occasions in connection with his affairs, and on every occasion I met Mrs. Fragley there, she was up and around and attending to Mr. Fragley, who was ill. Q. State whether or not Mrs. Fragley had any appearance at that time as to being ill herself; at the time the deed was executed, did she have any appearance of being ill at that time or not? A. No, sir; Mrs. Fragley was waiting on Mr. Fragley. Mr. Fragley was the one that was sick. Q. Now, state whether or not in any of the conversations held at the Fragley household on November 2, 1909, between Mr. Fragley or Mrs. Fragley and yourself, in which you were present, anything was said upon

the subject matter that this deed, Plaintiff's Exhibit 'A,' was intended by her to take the place of a will by her for the purpose of doing away with the necessity for probate proceedings after the death of Mrs. Fragley. A. There wasn't any expression of that idea at all. Q. State whether or not at any time on that day of November 2, 1909, or at any time before that time, any agreement or undertaking was had between Mrs. Fragley and her husband, any engagement or understanding was had between Mrs. Fragley and her husband, in your presence or with your knowledge, that the deed, Plaintiff's Exhibit 'A,' should not be recorded, nor that it should not take effect until said Sarah Fragley should die before her said husband. A. There was no mention made of the fact that Mrs. Fragley was about to die. There was no mention made of the fact that Mr. Fragley was only to get this property in case of Mrs. Fragley's death. As I stated before, everything that was being done so far as I had to do with it, was in contemplation of Mr. Fragley's death, and not in contemplation of Mrs. Fragley's death. Q. State at any of those conversations on November 2d, or at any time prior thereto, whether there was any understanding or agreement on the part of any of the parties that in the event of Mrs. Fragley surviving her said husband, said deed, Plaintiff's Exhibit 'A,' was to be of no force or effect or to be canceled or destroyed. A. There was no understanding whatever. That matter was not thought of at all. Q. This property went into the estate, to equalize matters that they had agreed upon among themselves? A. Yes, sir.'' These questions, it may be said, were aimed at the theory of appellants.

There is much more evidence in the record to the same effect but we deem it unnecessary to quote it. Giving full credit, as we must, to the foregoing testimony, the conclusion is irresistible that the deed was executed and delivered by the grantor to the grantee, absolutely and unconditionally, and that immediately upon its delivery all the interest of the grantor was vested in the grantee. It seems unnecessary to cite authorities as to the legal proposition involved, since the principle is so well established.

It is true there was evidence introduced by the defendant—principally the testimony of the grantor—that the delivery of said deed was conditional, that there was an understanding

between the grantor and the grantee that the deed was not to take effect unless the grantor died before the death of the grantee, but. this only created a conflict in the evidence. Besides, it must be said that the grantor was impeached by witnesses called in behalf of the executors.

Some contention is made by appellants that, since the deed was placed in a box to which the grantor had access and which she retained in her possession, such reservation and possession of the deed was fatal to a valid delivery; but it is perfectly apparent that it is entirely immaterial what became of the deed after it was actually delivered to the grantee. The cases cited by appellants, *Bury* v. *Young,* 98 Cal. 446, [35 Am. St. Rep. 186, 33 Pac. 338] , *Kenny* v. *Parks,* 125 Cal. 150, [57 Pac. 772], and *Moore* v. *Trot,* 156 Cal. 353, [134 Am. St. Rep. 131, 104 Pac. 578], discuss an entirely different situation. In view of the well-established rule, it would be a singular position to take that, after a deed has been executed and unconditionally delivered · and thereby the title to the property vested in the grantee, if the grantor has the opportunity afterward to get possession of the deed and destroy it, this circumstance would affect the title of the grantee. The fact is, of course, that, if the deed is executed voluntarily and freely and delivered to the grantee with the intention of vesting the title in him, no subsequent act of the grantor could affect the title thereby conveyed.

After an examination of the record we are satisfied that the findings of the court and the conclusions drawn therefrom are abundantly supported and that there is no merit whatever in the appeal. The judgment is, therefore, affirmed.

Hart, J., and Chipman, P. J., concurred.