[S. F. Nos. 8604, 8605.　In Bank.—November 24, 1919.]

CORA L. A. G. STONE et al., Plaintiffs and Appellants, v. GEORGE L. DAILY, Defendant and Appellant.

[1] Deed—Wife to Husband—Deposit With Bank—Delivery to Survivor—Ineffective Delivery.—Where a deed by a wife to her husband after signing and acknowledgment was deposited with a bank inclosed in a sealed envelope with an indorsement upon the envelope signed by both grantor and grantee instructing the bank to retain the envelope and its contents during the lifetimes of the parties and upon the death of either to deliver to the survivor upon demand, the delivery was not absolute, but conditional upon the grantee surviving the grantor.

[2] Id.—Act of Wife—Handing of Deed to Grantee—Intention of Parties.—While the act of a wife upon the signing and acknowledgment of a deed to her husband in handing the deed to him accompanied with the statement, "Here, George, is the deed and now the property is yours," might constitute a valid delivery if the handing over was a final act and with present intent irrevocably to vest title in the grantee, it would not constitute such a delivery if the intent of both parties was that the deed should be deposited with a bank with instructions to hold during their lifetimes and upon the death of either to deliver to the survivor.

[3] Id.—Ineffective Delivery — Acts of Parties — Deposit With Bank—Delivery to Survivor.—Under such circumstances, a strong

inference that .the handing over of the deed was not intended as a final and absolute delivery of the deed arose from the fact that immediately thereafter the parties deposited the deed with a bank with instructions to hold during their lifetimes, and to deliver upon the death of either to the survivor.

[4] ID.—INDORSEMENT OF RECEIPT OF DEED—INFERENCE OF DELIVERY UNWARRANTED.—Under such circumstances, no inference of the absolute delivery of the deed arose from the fact that the grantee signed an indorsement upon the deed acknowledging its receipt, since if the deed were to have remained in the hands of the grantee there would have been no occasion for the indorsement.

[5] ID.—HANDING OF DEED TO GRANTEE—REQUEST OF NONRECORDATION—BELIEF OF PARTIES—INEFFECTIVE DELIVERY.—Where both grantor and grantee hold the belief that a deed is not effective until recorded, the delivery of the deed with the request that it not be recorded during the lifetime of the grantor, is not a valid delivery.

[6] ID.—DELIVERY OF DEED—SUBSEQUENT RETENTION OF POSSESSION BY GRANTOR—VALIDITY OF DELIVERY NOT AFFECTED.—Where the formality of a delivery is gone through with the intent of making an immediately effective conveyance, but after delivery the grantor retains possession of the deed for the purposes of safekeeping, such delivery is valid and is not affected by the fact that the instrument subsequently remains in the possession of the grantor.

[7] ID.—RETAKING OF POSSESSION BY GRANTOR FOR SAFEKEEPING AND NONRECORDATION—VALIDITY OF DELIVERY UNAFFECTED.—Where a deed was formally delivered by the grantor to a third person for the grantees with the intention that the instrument should be immediately effective and vest in the grantees irrevocably the interests purported to be conveyed to them, the absolute and unqualified character of the delivery was not affected by the fact that the grantor, in accordance with her previous intention, immediately retook possession of the deed and kept it, when she definitely understood and intended that such possession should be merely for purposes of safekeeping and to insure that the instrument be not recorded and thereby come to the knowledge of her husband, and that she had no right or power to recall the instrument or change its character as an immediately effective instrument of conveyance.

APPEAL from a judgment of the Superior Court of Lake County. Emmet Seawell, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Robert Duncan, Ben C. Jones and John W. Preston for Plaintiffs and Appellants.

C. M. Crawford, John L. McNab and J. R. Leppo for Defendant and Appellant.

OLNEY, J.—This is a suit to quiet title to certain real property formerly belonging to one Mrs. Rebecca J. Daily, now deceased. The defendant is the surviving husband of Mrs. Daily and claims the property by reason of a deed of gift by her to him which for convenience we may call the Daily deed. The plaintiff, Mrs. Cora L. A. G. Stone, is a daughter of Mrs. Daily by a former husband, and is her only child, and the other plaintiffs are Mrs. Stone's children, Mrs. Daily's grandchildren. The plaintiffs claim under a deed of gift by Mrs. Daily to them, made subsequent to the Daily deed and which for convenience we may call the Stone deed. The plaintiffs contend that the Daily deed, while signed and acknowledged by Mrs. Daily, was not, in fact, delivered by her so as to become an effective instrument of conveyance. The defendant makes a similar contention with reference to the Stone deed, and the sole questions in the case are as to the respective deliveries of these two deeds. The trial court found that neither deed was delivered, with the result that neither the plaintiffs nor the defendant were the owners of the property except as they might be the heirs at law of Mrs. Daily, and gave judgment to that effect. From this judgment both sides appeal.

There is little, if any, conflict in the evidence. The dispute turns on the conclusions, both of law and of fact, to be drawn from the facts which appear in evidence. The land in question is a ranch in Lake County, which Mrs. Daily owned at the time of her marriage to Daily, and upon which she lived at that time and continued to live until her death. The deed to Daily was made in January, 1900, a year after the marriage. Daily was forty-seven years of age at the time and his wife some years older. Daily had no property, and, according to his testimony, the deed to him was made because he felt, and represented to his wife that he needed, some protection in his old age in case his wife would die first. Mrs. Daily thereupon consulted her attorney about making a deed to Daily reserving a life estate in herself. Her attorney advised her to make a will, saying that if she made a deed she could not take it back, but that if she made a will she could change it. She replied that she did

not wish to change it, but wished to give it (presumably the property) to Daily. Her attorney told her to think the matter over and a short time later she returned and requested him to prepare a deed. He thereupon prepared the deed in question here, purporting to convey the property to Mr. Daily, but reserving to Mrs. Daily the right to use and occupy it during her lifetime. Mr. Daily was called in, and the deed signed and acknowledged by Mrs. Daily. Upon this being done, Mrs. Daily, according to the testimony of the attorney and Daily himself, handed the deed to Daily, saying, "Here, George, is the deed and now the property is yours." Mrs. Daily requested that the deed be not recorded, and Daily asked the attorney to keep it. The latter did not wish to do so and suggested leaving it with the bank. He prepared an envelope for the purpose of inclosing the deed and indorsed upon it the following:

"We George L. Daily and Rebecca J. Daily, husband and wife, do hereby deposit this sealed envelope and its contents in the Bank of Lake at Lakeport, Cal., and we and each of us do hereby instruct the said Bank of Lake to hold the said envelope and its contents so long as we may live; and during such time not to deliver the same to either of us nor to any other person, nor suffer the seals to be broken; upon the death of either of us to deliver the same to the survivor on demand.

"Dated January 11th, 1900."

This indorsement was signed by both Mrs. Daily and her husband and the envelope with the deed inclosed was thereupon deposited with the bank designated, where it remained until Mrs. Daily's death, when it was delivered to the defendant. As a part of the transaction, and apparently looking to the deposit of the deed with the bank, the attorney indorsed on the back of the deed "Received January 11, 1899," and had Daily sign it. The year 1899 was written by mistake instead of 1900, but the difference is immaterial.

[1] Upon the foregoing facts it is plain that if the delivery which must be relied on in order to make the deed effective was the final delivery to the bank under the instructions indorsed upon the envelope, there was no such absolute delivery as must exist in order to give the instrument life. The instructions on the envelope determine the character of the delivery, and make it one conditional upon

Daily surviving his wife. If he did not survive her, the deed was to be returned to her and the purpose for which this provision for a return to the grantor was made was very evidently that the deed should not take effect in the event of the grantee dying before the grantor. Exactly this situation was presented in *Kenney* v. *Parks,* 125 Cal. 146, [57 Pac. 772], and it was held that there was no effective delivery, the court saying:

''The all-controlling fact in this case, which defeats plaintiff's claim, is that when the deeds were made and delivered to the cashier of the bank the respective grantors did not absolutely part with all future dominion and control over them, but, upon the contrary, the actual intention and understanding of each grantor was that upon the death of the other the survivor should take back his own deed, and that no title should vest under it.'' (See, also, *Canale* v. *Copello,* 137 Cal. 22, [69 Pac. 698]; *Keyes* v. *Meyers,* 147 Cal. 702, [82 Pac. 304]; *Long* v. *Ryan,* 166 Cal. 442, [137 Pac. 29].)

[2] Other than the depositing of the instrument with the bank under the instructions mentioned, there is no act appearing in evidence which could be said to constitute a valid delivery of the Daily deed, unless the act of Mrs. Daily in handing the deed to her husband in her lawyer's office just prior to its inclosure in the envelope and deposit with the bank and saying to him: ''Here, George, is the deed and now the property is yours,'' constituted such a delivery. A valid delivery might have been so made. If there had been in fact a handing over of the deed by Mrs. Daily to her husband as a final act and with the intent then and there irrevocably to vest in him the title to the property, there was a valid delivery. That afterward, no matter how shortly afterward, the parties changed their minds and sought to make another arrangement, as evidenced by the deposit with the bank, would make no difference. The transfer of title would have occurred, would have been a *fait accompli,* and could be undone only by a retransfer by Daily. The question is, Did Mrs. Daily hand the deed to her husband as a final act intended irrevocably to vest title in him, regardless of whether he survived her or not?

The trial court by its finding that there was no delivery of the deed impliedly found that this was not done, and in

view of the fact that the only evidence upon the point was the testimony of two witnesses as to the details of an occurrence of many years before, the legal effect of which might be changed by a very slight and wholly unintentional inaccuracy of recollection, it would be difficult in any case for us to hold that the testimony was sufficient to overthrow the adverse finding. It is not necessary, however, to put the decision upon this ground. We can assume what we believe to be the case, that the testimony in question is wholly truthful and at least fairly accurate, and yet it does not show, taken as a whole and in the light of all the circumstances, that the handing over of the deed by Mrs. Daily to Mr. Daily in the lawyer's office was a final and absolute delivery.

The question is one of intent: Was the delivery in the lawyer's office intended to be final and absolute? [3] In the first place, while it is possible to have had such a delivery in spite of the fact that immediately thereafter a very different arrangement was made by depositing the deed with the bank, the inference to the contrary arising from such deposit is very strong. The handing over of the deed to Mr. Daily and the agreeing upon its deposit with the bank were both parts of one continuous occurrence, of which the deposit in the bank is the final result. Such deposit is certainly what the parties finally intended; in fact, Mr. Daily so testifies; and the inference is very strong that anything done previously was merely preliminary and not final. There is no evidence to overcome this inference. In addition is the strongly confirmatory circumstance that the deposit with the bank accords with what the parties intended to do when Mrs. Daily went to her lawyer's office, and the absolute delivery of the deed to Daily does not. Mr. Daily himself testifies that the understanding between him and his wife before the deed was drawn was that the property was to be his only in case his wife died before him. If the deposit with the bank were effective, it would have accomplished just this, while the absolute delivery of the deed to him would not.

[4] We attach no significance favorable to delivery to the indorsement upon the deed signed by Daily acknowledging its receipt, but rather the contrary. There would have been no occasion for the indorsement if the deed were to remain in Daily's hands. The only reason apparent for making it

is that the deed was not to remain in his hands, i. e., it was contemplated when the indorsement was made that the deed was to be deposited with the bank as was actually done immediately afterward. If this be so and the receipt were given as a part of the formality of Mrs. Daily handing over the deed to Daily, it would indicate that at that very time the parties were contemplating the deposit with the bank, and the handing over was but a preliminary to this final result.

[5] In the second place, Mr. Daily testifies that at the time the deed was handed to him Mrs. Daily requested that it be not recorded and there is a strong inference at least from much that appears in evidence that Daily and his wife both had the not uncommon belief that the deed would not be effective unless recorded. If this was so, then the delivery to Daily was not valid, even assuming that the parties intended it at the moment as the final consummation of the matter and the deposit with the bank represents a subsequent change of mind. Under such circumstances the delivery, while final in one sense, was not intended as absolute, but was upon the condition that it was not to be recorded until Mrs. Daily's death, and in case Daily died first, was not to be recorded or be effective at all. If this were the character of the delivery, and we believe that this is the utmost that can be said for it, it comes directly within the authority of *Kenney* v. *Parks*, 137 Cal. 527, [70 Pac. 556]. The facts there were that a wife gave her husband a deed under the belief that it would not be valid until recorded and upon her husband's promise that he would not record it unless he survived her. He recorded it nevertheless and in a suit by the wife to recover the property it was held that there had not been a valid delivery. As we have said, we think that the utmost that can be said for the handing over of the deed by Mrs. Daily to her husband is that it was upon the same understanding as that in *Kenney* v. *Parks*. Our conclusion, therefore, is that not merely is there evidence to justify the finding that the Daily deed was not delivered, but it would be very difficult to justify any finding to the contrary.

The Stone deed was made in 1916, some sixteen years after the Daily deed, and purported to convey all of the property of the grantor, both real and personal, to Mrs. Stone for

life, with remainder over to her children reserving, however, a life estate to Mrs. Daily. A year or so before Mrs. Daily had arranged to sell a portion of her ranch and found herself unable to make title because of a declaration of homestead on the property by her husband. She was able to secure his relinquishment of the homestead only upon the payment of four thousand dollars, and she then declared that she had given him all she intended to give, and purposed to give the rest of her property to her daughter and the latter's children. Shortly before executing the deed she called upon a Mr. Neal, a searcher of records and notary public, and who occasionally drew conveyances, and informed him that she wished to leave her property to her daughter and her children. Neal suggested that she make a will, but she rejected the suggestion and requested him to draw a deed whereby Mrs. Stone would have the property during her life and her children afterward. She asked if she could place the deed in her box at the bank when executed to be delivered after her death. Neal informed her that she could not do this, and that the deed must be delivered when executed either to Mrs. Stone or to someone for her. She objected to this as she was afraid the deed might be recorded and she did not wish her husband to know of it. She finally concluded that she was willing to make delivery to one Fred Greene, the cashier of the local bank where she had her box, but wished after delivery to retake possession of the paper. Mr. Neal was uncertain as to whether this could be done and said he would look into it. What occurred between them on her return is so material that we quote Mr. Neal's testimony *verbatim:*

"And in the meantime I did study the question up and as a result of my study I told her that if she truly understood it in her own mind it was all right, that when she signed the deed and delivered it to a third person, that if she got possession of it again—the deed—that it was not her property in any respect, she could merely hold it for preservation and safekeeping, not only that but she didn't own the land, except what reservations she embodied in the deed, and that could be done."

Mrs. Daily thereupon told Neal to draw the deed, which he did. On her return to his office for the purpose of executing it and immediately prior to its execution, Neal

told her that the deed meant an absolute conveyance and left nothing in herself except what was reserved by it and repeated what he had previously told her. She then signed the deed and Neal acknowledged its execution, and he instructed her as to the formality of delivering the instrument and as to what she should say. The two then went to the bank, where Mrs. Daily handed the deed to Mr. Greene, saying in accordance with her instructions from Neal that she delivered it to him for Mrs. Stone and her children and wished him to give it to Mrs. Stone after her, Mrs. Daily's, death. Mr. Greene received the deed, looked it over briefly, and Mrs. Daily then requested it back to put in her box. It was given her, and placed in the box inclosed in an envelope indorsed:

"To be handed to Fred A. Greene on my death.
           "(Signed)    REBECCA H. DAILY."

The box was one which remained in the bank, but was Mrs. Daily's private box to which she alone had the key. The deed remained in the box until Mrs. Daily's death.

There is no dispute as to the above facts. The position of defendant's counsel, and apparently from the record the view of the trial judge, are that they do not amount to a valid delivery because of the final retention of possession of the instrument by Mrs. Daily, and in this connection it should be noted that such possession was in accord with the intention of Mrs. Daily before and at the time of her handing the deed to Greene. If her retaking the deed had been purely an afterthought there could be no reasonable question as to the validity of the delivery, but it was not an afterthought and the matter must be judged with this fact in mind. Nevertheless, we think there was unmistakably a final and absolute delivery. It is a question purely of Mrs. Daily's intent.

The final result of the transaction was, of course, the deposit of the deed in her private box in an envelope bearing an indorsement that it was to be handed to Mr. Greene upon her death. If there were nothing more, the conclusion would be irresistible that the instrument was not to become effective in any way until her death and that there was no real delivery. Furthermore, the inference would be strong that anything which occurred previously in the course of the transaction which had this as its final result was but pre-

liminary and tentative and not final, and the transaction would have to be judged by the final result. In this respect the situation is the same as that presented by the deposit with the bank of the Daily deed. But, as was said in the discussion respecting the Daily deed, it would be possible that there was a previous and absolute delivery intended to be then and there final and vest in the grantees the rights purported to be conveyed to them. In the case of the Daily deed there was no evidence sufficient to show this and overcome the inference to the contrary. But in the case of the Stone deed, the evidence leaves no doubt as to the fact. Mrs. Daily had been told by her adviser most explicitly and carefully that if the deed were to be effective it had to be delivered to Greene as a final and absolute conveyance then and there vesting the property in the grantees subject only to such reservations as the deed itself might make. She proceeded upon this understanding and with the intention of accomplishing it. There can be no doubt as to her intent. This was not controverted at the trial, and the record indicates plainly that the finding of nondelivery by the trial court was not predicated upon any doubt as to the necessary intent on Mrs. Daily's part in making the delivery to Greene, but upon her retaking possession of the deed from him and retaining such possession thereafter and the conclusion of the trial judge as to the legal effect of her so doing, regardless of the fact that her intent was clear.

But the retaking of possession and subsequent retention of the instrument by Mrs. Daily is not conclusive even though it appear that it was not an afterthought, but contemplated by her from the beginning. It is a very strong circumstance indicating that she did not intend such delivery as would put the deed beyond her control and power of recall, and would ordinarily be controlling. But the final question always is, What was the intent with which the formality of a delivery was gone through with? And if it appear indubitably that it was gone through with for the purpose of conveying the property then and there, and that the grantor desired thereafter to retain, and did retain the instrument, not that she might control or suspend its taking effect, but for the purposes of custody and safekeeping merely, as, for instance, to insure its not being recorded because she did not wish her husband to know of it, any contrary inference

as to her intent arising from her continued possession of the instrument is of necessity overcome, and the fact of such continued possession becomes immaterial. Such is the situation here. Mrs. Daily had been told in almost so many words that she could not make a valid conveyance to her daughter and grandchildren and retain possession of the deed unless she was willing to vest the property in them at the time and to have possession of the deed thereafter merely for purposes of safekeeping. She was willing to do this and wished to do it and proceeded with the matter with the intent of doing it.

[6] The case, then, is one where the formality of a delivery is gone through with with the intent of making an immediately effective conveyance, but after delivery the grantor retains possession of the deed for purposes of safekeeping. That such a delivery is valid and is not affected by the fact that the instrument subsequently remains in the possession of the grantor is well established. Chancellor Kent, in his Commentaries (volume 4, pages 455, 456), says: "So, if a deed be duly delivered in the first instance, it will operate though the grantee suffer it to remain in the custody of the grantor. If both parties be present, and the usual formalities of execution take place, and the contract is to all appearances consummated without any conditions or qualifications annexed, it is a complete and valid deed, notwithstanding it be left in the custody of the grantor."

In Devlin on Deeds (third edition), section 278a, it is said: "Where a deed has been duly delivered, the fact that the grantee allows it to remain in the custody of the grantor will not invalidate it. A deed may be returned, after delivery to the grantor, so as to insure that it would not be placed on record without affecting the delivery." (See, also, *Kenniff* v. *Caulfield*, 140 Cal. 34, [73 Pac. 803]; *King* v. *Fragley*, 19 Cal. App. 735, [127 Pac. 813]; *Doe* v. *Knight*, 5 Barn. & C. 671; *Souverbye* v. *Arden*, 1 John. Ch. (N. Y.) 240; *Scrugham* v. *Wood*, 15 Wend. (N. Y.) 545, [30 Am. Dec. 75]; *Rodemcier* v. *Brown*, 169 Ill. 347, [61 Am. St. Rep. 176, 48 N. E. 468]; *Munro* v. *Bowles*, 187 Ill. 346, [54 L. R. A. 865, 58 N. E. 331]; *Riegel* v. *Riegel*, 243 Ill. 626, [90 N. E. 1108]; *Ruckman* v. *Ruckman*, 32 N. J. Eq. 259; *Tarbox* v. *Grant*, 56 N. J. Eq. 199, [39 Atl. 378]; *Wall* v. *Wall*, 30 Miss. 91, [64 Am. Dec. 147].) In a number of

these cases the facts are very similar to those of the case at bar.

Counsel for defendant refer to the language of a number of cases such as *Bury* v. *Young*, 98 Cal. 446, [35 Am. St. Rep. 186, 33 Pac. 338], *Kenney* v. *Parks*, 125 Cal. 146, [57 Pac. 772], *Keyes* v. *Meyers*, 147 Cal. 702, [82 Pac. 304], *Moore* v. *Trott*, 162 Cal. 268, [122 Pac. 462], and *Long* v. *Ryan*, 166 Cal. 442, [137 Pac. 29], to the effect that "The essential requisite to the validity of a deed transferred under circumstances as indicated in this case, is that when it is placed in the hands of the third party, it has passed beyond the control of the grantor for all time." But an examination of these cases shows at once that when they speak of the necessity of the control of the instrument passing from the grantor for all time, they mean control in the sense of power to recall it, control over it as an effective instrument of conveyance, not control in the sense of having the mere physical custody of it. This is strikingly shown by *Moore* v. *Trott*, *supra*, where, on page 274 of the report (162 Cal.), 122 Pac. 465, it is said:

"It has long, if not always, been the rule that the delivery of an instrument is a question of intent, and that to a complete delivery no precise form of words and no particular character of act is necessary. The delivery is sufficient and complete if from any or all of the circumstances the grantor has made known his intention irrevocably to part with his dominion and control over the instrument, to the end that it may presently vest title in another." And yet, on the next page, the following quotation from *Ruckman* v. *Ruckman*, *supra*, is made with approval:

"Whenever it appears that the contract or arrangement between the parties has been so far executed or completed, that they must have understood that the grantor had divested himself of title, and that the grantee was invested with it, delivery will be considered complete, though the instrument itself still remains in the hands of the grantor."

[7] To sum the discussion up, it appears as to the Stone deed that it was formally delivered by the grantor to a third person for the grantees; that it was the intention of the grantor in making such delivery that the instrument should be immediately effective and vest in the grantees

irrevocably the interests purported to be conveyed to them, and that while the grantor intended throughout the transaction to retake possession of the instrument and herself keep it, and this was done, yet she definitely understood and intended that such possession should be merely, for purposes of safekeeping and to insure that the instrument be not recorded and thereby come to the knowledge of her husband, and that she had no right or power to recall the instrument or change its character as an immediately effective instrument of conveyance. It follows, since the full intent to make an absolute and unqualified delivery was present, that such delivery was made, and the finding that the deed was not delivered cannot be sustained.

Judgment reversed for a new trial upon the issue as to the delivery or nondelivery of the Stone deed, the finding as to the nondelivery of the Daily deed to stand.

Shaw, J., Lennon, J., Melvin, J., and Lawlor, J., concurred.

ANGELLOTTI, C. J., Concurring.—I am not satisfied that a finding of the trial court to the effect that the Daily deed was delivered could properly be held to be without sufficient support in the evidence. The finding actually made, however, was that such deed was not delivered, and as shown in the opinion, this finding has ample support in the evidence. In all respects other than the intimation that a finding to the contrary could not have been sustained by an appellate court, I concur in the opinion and in the judgment.

Wilbur, J., concurred.

Rehearing denied.

All the Justices concurred, except Melvin, J., who was absent.