LEATHERMAN ET AL., APPELLANTS, *v.* ABRAMS ET AL., APPELLEES.

150

(No. 217—Decided July 8, 1949.)

*Mr. John A. Weber* and *Mr. Harold L. Williams,* for appellants.

*Mr. Roy E. Sebrell, Mr. Carl W. Tschantz* and *Mr. Ralph Burroughs,* for appellees.

DOYLE, J. This is an action to enjoin Roy E. Sebrell, an attorney at law, from delivering purported deeds to certain grantees named therein, or from submitting the same for tranfer or record to the proper county officials in Medina county; and to have declared that the purported deeds are "void and of no force and effect."

The amended petition states that Milton H. Leatherman died July 3, 1946; that he was the father of three children—Frank W. Leatherman, Mary Abrams and Carrie Jones; that Carrie Jones predeceased her father but left surviving an adopted son. Dale C. Jones, one of the plaintiffs herein; that at the time of Leatherman's death he was seized of nine parcels of real estate which vested one-third in each: the son Frank, the daughter Mary, and Dale C. Jones, the adopted son of the deceased daughter Carrie; that within a period of two years prior to his death, he signed papers "which are purported and pretended deeds of the real estate," and which, if valid, would constitute an in-

equitable division of the decedent's estate; that the purported deeds were signed by the deceased at a time when he was unable, through mental infirmity, to make valid disposition of his property, and at a time when undue influence was exerted upon him by various ones of the defendants who occupied positions of trust and confidence to him.

In addition to the above claims, it is pleaded "that said purported and pretended deeds, pursuant to an understanding with the defendant Roy E. Sebrell, were placed with him to be held until after the death of said decedent, Milton H. Leatherman, under a claimed understanding with the said decedent that the same would be delivered to the purported grantees after the death of said decedent, upon payment of inheritance or succession taxes, if any, by said purported grantees, and that said defendants, and each of them, regard said purported deeds as deeds of gift. Plaintiffs further say that said purported and pretended deeds were predated or dated back with the intent and purpose of evading any inheritance tax on the pretended successions purportedly created thereby. Plaintiffs further say that none of said purported and pretended deeds are properly signed, witnessed, dated, acknowledged or delivered, and that none of them are of any force or effect whatsoever."

Issues were joined by the answers of the defendants. Pursuant to trial in the Court of Common Pleas of Medina County, a decree was entered denying an injunction and establishing the validity of the deeds.

Appeal on questions of law and fact to this court, brings here the case for trial *de novo*.

It appears in the record, and we so find the facts to be, that Milton H. Leatherman, a retired lumber and building supply dealer, was the owner of nine different parcels of real property, and, being desirous

of distributing this property among his own children and the children of his second wife at a time shortly following the death of the second wife (Carrie Selby Leatherman), he did the following things to effectuate his plan:

1. On November 10, 1944, he requested his lawyer, Roy E. Sebrell, to prepare two deeds, one to convey property No. 1 to Ethel and Clarence Selby (Clarence was the son of his second wife by a former marriage, and Ethel was the wife of Clarence), and the other to convey property No. 2 to his daughter, Mary E. Abrams. On the following day, in the presence of his daughter, Mary, he signed the prepared deeds in his lawyer's office, after which they were duly executed. He and his daughter then executed an instrument designated ''escrow agreement,'' which is in the following language:

''Whereas, M. H. Leatherman has executed and delivered to Mary E. Abrams a certain deed dated November 10, 1944, and,

''Whereas, it is desired by both parties not to record said deed at this time but that said deed shall be placed in escrow with Roy E. Sebrell with instructions not to record said deed until requested so to do by the said Mary E. Abrams:

''Now therefore, I the said Mary E. Abrams do herewith submit to Roy E. Sebrell the above-described deed under the conditions aforesaid, and, I, the said M. H. Leatherman, do hereby consent to such escrow and I agree as a part of my board and room with the said Mary E. Abrams to pay all taxes and assessments and insurance on said premises that may become due and payable during my lifetime.

''In the event of the death of Mary E. Abrams before the death of M. H. Leatherman we hereby direct the said Roy E. Sebrell to return the said deed to M.

H. Leatherman and in the event of the death of M. H. Leatherman before Mary E. Abrams the said Roy E. Sebrell shall immediately record said deed.

"In witness whereof, we have hereunto set our hands this 11th day of November, 1944.

"(Signed)  Milton H. Leatherman
"Mary E. Abrams.

"Received of Mary Abrams the deed for Wadsworth City Lot No. 1065.  Dated Nov. 11, 1944.

"(Signed)  Roy E. Sebrell."

Following this business transaction, he left the lawyer's office possessed of the deed to property No. 1, in which the Selbys were named as grantees.  The deed to property No. 2 and the instrument designated "escrow agreement" were left with the attorney.  Mr. Leatherman personally handed the deed to property No. 1 to the Selbys, with instructions that it should be given to attorney Sebrell, to be held by him "as long as he (Leatherman) lived."  Shortly thereafter, the Selbys gave the deed to the attorney.

Epitomizing the above, it is found that both deeds were manually handed to the grantees.  The deed to Mary Abrams was accompanied with the agreement set out in full above, which purported to condition her title on the fact of survivorship.  The deed to the Selbys was accompanied with no conditions, either written or verbal, on the fact of survivorship.  It was understood, however, that they were to give the deed to Mr. Sebrell, who was to record the instrument upon the death of the grantor.

In addition to the foregoing, it appears that Mr. Leatherman had written to one Howard Selby (a brother of Clarence) at his army station in Europe, and advised him that he intended to deed him a property.  On the 6th day of February, 1945, he again appeared at Mr. Sebrell's office and, at his request, there

was prepared and executed a deed to property No. 3, in which Howard Selby was the named grantee. This deed, pursuant to instructions of the grantor, was forwarded to the grantee in France, with a letter explaining that the deed was to be returned to Mr. Sebrell, to be held during the lifetime of the grantor, and that the grantor was to receive all income, would pay taxes, insurance, upkeep, etc. The letter further stated that if the grantee should predecease the grantor, Mr. Sebrell should deliver back the deed to the grantor; however, if Mr. Leatherman died first, then Mr. Sebrell was to record the deed upon the payment by Mr. Selby of taxes, revenue stamps, recording fees, etc. This deed and letter were remailed from France back to attorney Sebrell, and the contents are in the record before us.

As we view these transactions, we do not believe that there was intended a delivery of title to the grantees when the deeds were manually given to the grantees. The deeds were not, at those times, to become absolute. There did not exist the necessary intent to furnish a muniment of title. On the contrary, the deeds were to be placed in the hands of a third person, and, by him, kept until certain events occurred. It may be properly said, we think, that when the deeds were in the hands of the grantees, they were "in transit" to the possession of Sebrell—as much so as if words to that effect had been pronounced by Leatherman at the time he handed them or sent them to the grantees. The giving of the deeds to the grantees, and the agreement upon the deposit with a third person with directions to give them to the survivor grantee or grantor, was one continuous transaction, and refutes a claim of an absolute delivery in the first instance. *Fairbanks, Admr.*, v. *Metcalf*, 8 Mass., 230; *Stone* v. *Daily*, 181 Cal., 571, 185 P., 665.

Under circumstances which present a sufficient physical delivery of a deed by a grantor to a grantee named therein, if the evidence accompanying such physical delivery compels the conclusion that the grantor did not intend that the delivery of the instruments to the grantees should become operative as a conveyance of the property, and the grantee so understood the facts to be, such delivery would not constitute a conveyance of the property. In other words, the mere manual transfer of a deed to a grantee is not conclusive evidence of delivery since the transfer of possession of a deed must be with the intent of presently passing title. However, under the factual situation shown here, the named grantees did become the agents of the named grantor, for the purpose of delivery of the deeds to the third person (Sebrell).

We now come to the next problem: What is the effect of the delivery of a deed by a grantor through his agent to a third person, with directions to the third person to record the deed upon the death of the grantor if, at such time, the grantee be living, but in the event of the death of the grantee before the death of the grantor, that the third person shall return the deed to the grantor?

This court, in 1947, had occasion to examine the law applicable to a factual situation in which A, after executing a deed to B, and intending thereby to make the instrument operative as his deed, delivered it as such to X, with instructions to deliver the instrument to B at the time of his (A's) death. We there said:

"1. Where a grantor delivers his duly executed deed to a third person, to be delivered by him to the grantees named therein at the grantor's death, and the grantor then and there intends to part with all right to withdraw, revoke or control the instrument, and such deed is delivered accordingly and recorded,

the title to the property passes to the grantees."
*Oberholtz* v. *Oberholtz,* 79 Ohio App., 540, 74 N. E.
(2d), 574.

See, also, *Crooks* v. *Crooks,* 34 Ohio St., 610; *Ball* v.
*Foreman,* 37 Ohio St., 132; *Patrick* v. *Parrott,* 92 Ohio
St., 184, 110 N. E., 725; *Streeper, Admr.,* v. *Myers,* 132
Ohio St., 322, 7 N. E. (2d), 554.

In our examination into the law pertinent to the
*Oberholtz case, supra,* as well as to other cases before
this court not officially reported, we assembled the
characteristic features of several groups of cases. In
one group, we found cases involving delivery by a
grantor A to the depositary X, in which there was no
intention to pass title thereby to a named grantee B,
and the question as to whether any title ever would
pass to B depended on the future conduct of the gran-
tee in complying with the terms of a business trans-
action between A and B, sufficient to create in B an
interest in the land and which could be protected in a
court of equity. Here was encountered a delivery in
escrow, in the true sense of the term "escrow."

In another group, we found the state of affairs to
be the opposite. In this class, there were no trans-
actions between A and B sufficient to create an equi-
table estate in the land, but when A delivered his deed
to the depositary, his intent was that it should definite-
ly operate in B's favor unqualifiedly. Under certain
language employed, it was sometimes found that it
was the grantor's intent that the giving of the pos-
sessory interest should be for a time postponed, but
that was the only qualification. Into this group, we
found *Oberholtz* v. *Oberholtz, supra,* to fall, in which
title passed to the grantee unqualifiedly.

The affirmative factors shown in these groups of
cases do not appear in the part of this case now under
consideration (the deeds to Mrs. Abrams and to How-

ard Selby, properties No. 2 and No. 3). There was no transaction between the grantor and grantees sufficient to create in the grantees an equitable interest in the land; nor is it clear that the grantor, by his delivery of the deeds in the grantees' favor to the depositary, intended to part with all control over the deeds and to vest in the grantees an unconditional interest in the land, postponed only with respect to possessory rights until the grantor's death.

In this state, in determining the question of the sufficiency of delivery, courts have, for long, posed the question: "Does the grantor by his act mean to part with his title?" And in this connection, the courts have said: "* * * whatever satisfactorily manifests this design is as good as an explicit declaration. No precise form of words is necessary. Anything that shows the purpose is enough. Usually it is held that when the grantor delivers his deed to a third person to be delivered by him to the grantee at the death of the grantor, without reserving to himself any control over the instrument, a valid delivery is shown. But if the grantor reserves the right or power to recall the deed at any time before his death, there is no delivery; in such case, the depositary is the agent of the grantor, and holds the deed subject to his direction and control." 13 Ohio Jurisprudence, Deeds, Section 75.

The deliveries under discussion, which must be relied upon in order to make the deeds effective, were the deliveries to Sebrell by the grantees, acting as agents for the grantor; and, in the light of the mutual understanding and agreement of the parties, there was, in no case, such an absolute delivery, with an intention to pass title, as the law requires. The agreement and understanding between the parties, whether written or verbal, made the passing, in each case, of title, conditional upon the grantees surviving the grantor.

It may be stated concisely that, when a deed is given to a third person, instructed to keep it until the death of either grantor or grantee, and then to deliver it to the survivor, the delivery is not effectual. Such a delivery is not absolute, but is conditional upon grantee surviving grantor. It is not a delivery dependent upon the happening of an event which is certain to occur, and is not sufficient to pass title. *Stone* v. *Daily, supra*; *Weber* v. *Brak*, 289 Ill., 564, 124 N. E., 654; *Stanforth* v. *Bailey*, 344 Ill., 38, 175 N. E., 784.

Such a transaction is "in the nature of a testamentary disposition of property" and invalid as a deed to property. *Williams* v. *Schatz*, 42 Ohio St., 47.

Proceeding now to the deed to property No. 1, in which Ethel and Clarence Selby are the named grantees, we find it to be absolute and unconditional and to be held only by the third person, Sebrell, until the death of the grantor. Neither the deed itself nor the circumstances surrounding its delivery bring the transaction within the rules, heretofore pronounced, applicable to the deeds to properties No. 2 and No. 3.

It is the conclusion of this court that the injunction prayed for in respect to properties No. 2 and No. 3 should be granted, and the deeds held void and of no effect, for the reason of insufficient delivery; that, as to property No. 1, the injunction should be denied and the deed be determined valid.

2. We now proceed to state the circumstances surrounding the transfer of deeds to the remaining six parcels of property, and to give our conclusion respecting the legal effect thereof.

In February of 1946, Leatherman again called upon his lawyer, Sebrell, and requested the preparation of six deeds, three of them to name his daughter, Mary Abrams, as the grantee of three different properties, and three of them to name his son, Frank W. Leather-

man, as grantee of three other properties. The deeds were prepared, and, pursuant to request, were carried by the attorney to a meeting between the grantor and various members of his family, which included the two named grantees.

At the meeting, after examination of the deeds, the grantor signed them and transmitted them to the lawyer, who thereupon signed his name as a witness to each of them and took the acknowledgement as a notary public of the grantor's signature on each of them. The deeds were then handed back to the grantor, who handed the three deeds, on which the name of Mary Abrams appeared as grantee, to the said Mary Abrams, and he did likewise with respect to the three other deeds to Frank W. Leatherman, the named grantee. During these proceedings, the grantor instructed the respective recipients to give them to the lawyer, who was directed to hold them until his (the grantor's) death, after which the deeds would be recorded, upon the payment by the respective grantees of revenue stamps, recording fees, etc.

On the next morning, the named grantor, Milton H. Leatherman, again appeared at the office of attorney Sebrell, and, in the presence of one Kathryn Miller and attorney Sebrell, acknowledged his signature to the deeds and requested Mrs. Miller to sign as a second witness. This she did, and thereafter attorney Sebrell affixed his notary seal on each of the instruments. These deeds have continued in the possession of Sebrell from that time.

Upon analysis of the circumstances as shown in the record, we are of the opinion that these deeds were, in fact, delivered to the third person, Sebrell, by the grantor as *his deeds* (as was the case involving property No. 1 noted *supra*), to be later delivered, to the respective grantees named therein, by the third per-

son, at the time of the grantor's death, and that such delivery made them the grantor's deeds presently and that the depositary became an agent of the grantees. These facts we find to be sufficient to pass title to the properties involved to the grantees. There was an intent to furnish a muniment of title. *Crooks* v. *Crooks, supra.*

We do not find here any reservation of a right or power to recall the deeds at any time before the grantor's death, which power, if it existed, would have made the depositary the agent of the grantor, and in which event there would have been no delivery. *Ball* v. *Foreman*, 37 Ohio St., 132, at p. 139.

It is our conclusion that these six instruments convey a legal title to the grantees named therein.

3. Passing directly now on all of the remaining claims that the deeds are ''void and of no effect to pass title,'' we conclude that:

A. The claim of no consideration cannot be sustained to invalidate the instruments.

B. ''Fraud and undue influence'' did not result in the transactions involving property No. 2, which transactions we have heretofore found, however, were insufficient to pass title under the instrument. Neither do we find that fraud or undue influence is shown to exist in the transactions involving any of the other properties here under consideration.

C. The deeds to the last six properties involved were properly witnessed. The events transpiring at the meeting of the family in February, 1946, and those transpiring at the office of the attorney, were all a part of one continuous transaction, climaxed by delivery to the depositary as agent for the grantees.

D. The execution of the deeds under certain circumstances not found necessary to set forth herein was not against public policy.

4. The case of *Hale* v. *Hale*, reported in 31 Ohio Law Abs., 299, has been stressed in argument as determinative of several of the questions involved here. In a re-examination of that case, decided several years ago by this court, we find an entirely different factual situation. There we found a delivery of a deed direct to a grantee, with intent to furnish a muniment of title to the grantee.

A decree will be prepared in conformity to the findings herein expressed.

*Decree accordingly.*

Stevens, P. J., and Hunsicker, J., concur.

(Decided January 4, 1950.)

On Rehearing.

By the Court. We have re-examined the record in the light of the additional evidence admitted by this court pursuant to our allowance of a motion to reopen the case for the purpose of presenting such testimony.

It cannot be contrariwise argued that the crucial test of the valid delivery of a deed is the intention of the grantor to pass title; and when it is shown that the owner of property has not intended to part with all dominion or control over his property during his lifetime, the instrument becomes, upon his death, a mere nullity.

As we view this entire record, we come to no other conclusion than that the mere handing to the grantees of the deeds in question, was not sufficient to infer an intent in the grantor to pass present title to the property, he thereby releasing any further right or interest in himself to the title to the property. In fact, the evidence speaks to the contrary, for it was

understood by all, at the time of the manual giving of the deeds from one to the other, that ultimately the deeds were to be given into the custody of a third person depositary, who was to return them to the grantor in the event the grantee named should predecease the said grantor.

A decree will be entered as directed in the original opinion.

*Decree accordingly.*

STEVENS, P. J., HUNSICKER and DOYLE, JJ., concur.