[Sac. No. 5085. In Bank.—June 30, 1939.]

LENA LONGLEY, as Executrix, etc., et al., Appellants, v. EMERY E. BROOKS, Respondent.

Keyes & Erskine, W. B. Ryder and J. Benton Tulley for Appellants.

Brown & Chamberlain for Respondent.

THE COURT.—This was an action to quiet title to certain real property located in Stanislaus County, referred to by the parties herein as the "Newman Ranch". Prior to August 5, 1929, the undisputed title to the property was in Marcia Brooks (now deceased), who at that time was the wife of defendant Emery Brooks. The latter claimed title to the land by virtue of a deed executed in his favor on said August 5, 1929, by his then wife, the said Marcia Brooks. The plaintiffs herein are, respectively, the two sisters and a brother of Marcia Brooks, all of whom claimed title to the property as respective residuary legatees under the will of Marcia Brooks.

The trial court found in favor of defendant on all material issues, and in accordance therewith rendered its decree quieting the title to the property in favor of defendant herein. The plaintiffs have appealed from the judgment, their principal contention being that there was no "delivery" of the deed to respondent by his wife, and, consequently, that the findings of the trial court are without support in the evidence.

The record herein shows that respondent and Marcia Brooks intermarried on September 27, 1928, and lived together as husband and wife until the death of the latter in October, 1933; that Marcia Brooks was the owner of considerable real property at the time of her marriage to the respondent herein; that prior to the marriage the spouses had mutually agreed that all money acquired by either of them would be deposited in a joint bank account, and that the wife would give the husband a parcel of her real property as a home, in consideration of his taking over the management, control and improvement of the said properties. Pursuant to that agreement, and during the marriage, the husband deposited $700 or more of his own funds in the joint account, and devoted the greater part of his time to the management and operation of his wife's properties.

Concerning the circumstances surrounding the alleged delivery of the deed, the trial court found substantially as follows: That on or about August 1, 1929, at a time when one of the plaintiffs herein, Frances McGovern, was visiting at the home of Marcia and Emery Brooks, in Sonoma County, and in the presence of the said Frances McGovern, Marcia Brooks made the statement to her husband, Emery Brooks, that during the visit of Frances McGovern, "she, the said Marcia Brooks, was going in [to the City of Santa Rosa] and fix up some 'papers' and that she was going to give said Emery Brooks some property for a home . . . and asked said Emery Brooks which one [of the properties] he would prefer, that is, the Santa Rosa ranch upon which Emery Brooks and Marcia Brooks were then residing . . . or the 'Newman ranch' that being the real property located in the County of Stanislaus, . . . [and that] said Emery Brooks stated that he desired the said 'Newman ranch', . . . That thereupon said Marcia Brooks said 'All right' ''; that the two women then proceeded to the city of Santa Rosa, where, at the office of J. W. Ford, the attorney for Marcia Brooks, she instructed him to prepare a deed to each of three parcels of her properties, and also to prepare her will; that Marcia Brooks and Frances McGovern then went to the Bank of America, in Santa Rosa, where, in writing, Marcia Brooks authorized the bank to permit Frances McGovern to have the joint use of and access to a safety deposit box which theretofore had been accessible only to Marcia Brooks; that in granting the joint use of the safety deposit box to her sister, Marcia Brooks intended the said Frances McGovern to have the right to the control and possession of the deeds prepared or to be prepared by Mr. Ford on behalf of Marcia Brooks. It was further found that on the 5th day of August, 1929, Marcia Brooks and her husband, Emery Brooks, went to the city of Santa Rosa; that upon their arrival there the former called at the office of said Mr. Ford and at that time and place executed and acknowledged each of the three deeds (one of which was the deed herein concerned) which had been prepared. by Mr. Ford in accordance with the request of Marcia Brooks; also, that at that time and place she executed her last will; that at the request of Marcia Brooks, Mr. Ford "enclosed said deeds in an envelope and *partially or wholly* sealed the same and delivered the envelope and its contents to said Marcia Brooks"

(emphasis added); that immeditely thereafter the latter left the office of her attorney and joined her husband; that the two proceeded to the Bank of America "to place in the safety deposit box . . . the said deeds so executed"; that previously it had been agreed between husband and wife that at all times the husband should have the use of said safety deposit box as a depositary for "papers" belonging to him; that upon their arrival · at the bank on said August 5th, Marcia Brooks "opened said envelope containing said deeds and then and there *exhibited to said Emery E. Brooks* the deed which she had just executed, conveying to him the real property located in Stanislaus County . . . and then and there *delivered* to him the actual, manual custody and control thereof and informed him that she had deeded the said property to him" (emphasis added); that thereupon said Emery Brooks placed the deed with certain papers belonging to him "and then and there delivered the same and all thereof, together with said deed to said Marcia Brooks for the purpose of safe-keeping and for no other purpose"; that Marcia Brooks then placed the papers, including the deed which had been handed to her by her husband, in the safety deposit box. The findings further recite that "it was then and there the purpose and intention of said Marcia Brooks to make . . . a full, complete and actual delivery of said deed to said Emery Brooks with the intention . . . of conveying to said Emery Brooks the full legal title to said real property . . . and that said delivery should be irrevocable". It was also found that all of the acts and transactions of said Marcia Brooks—beginning with the conversation had on the morning of August 1st, when, in the presence of Frances McGovern, she asked her husband which ranch he preferred, and ending with the placing of his "papers" (including the deed) in the safety deposit box—constituted one entire transaction; and that those acts and transactions were intended by Marcia Brooks to constitute an immediately effective conveyance to said Emery Brooks of the real property here involved. The trial court further found that later in the year 1929, on an occasion when Marcia Brooks and Frances McGovern were again at the bank hereinabove mentioned, Marcia Brooks showed the latter a certain envelope containing the three deeds and told Frances McGovern (whom she had appointed executrix of her will)

that "those were the deeds" and that in case anything happened to her (Marcia Brooks) the said Frances McGovern would find the deeds either in the safety deposit box or at the office of Mr. Ford.

After the death of Marcia Brooks, the three deeds were found in the safety deposit box and, according to some of the testimony, they were in the same envelope in which they had been placed originally by Mr. Ford,—and when so found the envelope which contained them was sealed, and there was a conspicuous "dirty smudge" on the outside of the flap of the envelope.

In accordance with well-established law, it is clear that if the findings relating to the delivery of the deed to the respondent are substantially supported by the evidence, or if there is a substantial conflict in the evidence upon which the findings are made to rest, the resulting judgment may not be disturbed. The appellants contend, however, that there is not sufficient evidentiary support for the finding as to the delivery of the deed. They call attention to testimony of the witness Ford to the effect that at the time the deeds were executed, and at the request of Marcia Brooks, he placed them in an envelope and *sealed* the envelope—and point out that there was evidence to show that after the death of Marcia Brooks the three deeds were found in a *sealed* envelope, which was conceded to be the same envelope in which the deeds originally had been placed by Mr. Ford. From a consideration of these two circumstances, appellants contend that the only inference that could be drawn therefrom was that the envelope had not been opened subsequent to the time it left Mr. Ford's possession and until after the death of Marcia Brooks, and that, as a consequence thereof, the testimony of respondent to the effect that on August 5th, while he and his wife were at the bank, she exhibited and delivered to him the deed, was inherently improbable—and could form no basis for the finding of the trial court that on the occasion last mentioned the deed was in fact delivered to respondent. However, as stated hereinbefore, the trial court found that when Mr. Ford handed the deeds to Marcia Brooks, he "sealed or *partially* sealed" (emphasis added) the envelope in which the deeds were placed,—and that when Marcia and Emery Brooks were at the bank, the former "opened" the envelope and delivered

the deed into her husband's hands. Had the envelope been only "partially" sealed by Mr. Ford—as the trial court found might have been the case—the finding of the subsequent "opening" of the envelope by Marcia Brooks, at the time when (presumably) she made the delivery, would have been entirely consistent with and supported by the positive testimony of Emery Brooks as to the delivery of the deed to him by his wife on the said August 5th. From the fact, as found by the trial court, that Marcia Brooks did open the envelope on that occasion, the inference may well have been drawn that she sealed the envelope thereafter—and that it was her act in that regard, and not Mr. Ford's act, that accounted for the sealed and soiled condition of the envelope when it was found after her death. Also, the respondent contends that Mr. Ford's positive testimony that he sealed the envelope at the time it left his possession is weakened by the fact that his testimony in that regard was unsupported, since the only witness to the alleged incident (Marcia Brooks) is now deceased; also, that the "dirty smudge" which was found to be on the outside of the envelope, along the flap thereof, at the time it was opened after the death of Marcia Brooks—when viewed in the light of Mr. Ford's testimony that the envelope in which he placed the deeds was an "unused" envelope and that he (Mr. Ford) had not noticed such a "smudge" mark on the outside thereof at the time he handed it to Marcia Brooks—was an additional circumstance from which the inference might have been drawn that the envelope had been opened on the occasion when respondent testified the deed was delivered into his hands, and that the "smudge" might have been caused by the re-sealing of the envelope thereafter. Of course, as frequently may be observed, the mucilage on the inside of the flap on the envelope may have been only inappreciably moistened, with the result that the sealing at that time may have been very slight. In any event, the weight to be given the testimony as to the sealing of the envelope, as well as that of all the other testimony bearing on the question of the delivery of the deed, presented a question of fact for determination by the trial court.

In further support of their contention that there was no evidence showing delivery of the deed by Marcia Brooks to the respondent herein, the appellants rely upon the testimony of the witness, Frances McGovern, in effect, that some months

after August 5, 1929, she had asked Marcia Brooks if she had shown the deed to her husband, and that she replied that she had not done so; that the witness then had asked her why she had not, and Marcia Brooks had replied: "Well, for several good reasons, . . . he would lose all interest in the Santa Rosa ranch", and " . . . he still corresponds with his second [former] wife".

As opposed to the testimony last above recited in support of appellants' contention that there was no delivery of the deed, the respondent's testimony was substantially as follows: that on August 5th, at the time when his wife and he were together at the bank and while he was looking at his insurance papers, his wife said to him: " 'I want to show my husband what a good wife he has got', and [she] presented me the deed. . . . Q. She handed you the deed then? A. Yes, sir, gave me the deed. Q. Did you look at the deed? A. Yes, sir. Q. What deed was that? A. I opened up the deed and read, it was—it stated on it this Orestimba Rancho of Newman. . . . Q. After you read that deed, or examined it, what did you then do with it? A. I laid it down on top of this pink [automobile] slip and insurance papers. . . . Q. What was then done with those? A. My wife picked them up. . . . Q. Did you say anything to your wife after your wife handed you the deed? A. Yes sir, I looked at it and read which place it was, what I wanted, and I thanked my wife . . . Q. Was that [deed] placed in your wife's safe deposit box with your consent? A. Yes, sir. . . . Q. And for what purpose? A. For safe keeping."

A question as to the delivery of a deed is one of fact (*Williams* v. *Kidd,* 170 Cal. 631 [151 Pac. 1, Ann. Cas. 1916E, 703]); and a finding made by a trial court on such a question, based on conflicting evidence, will not be disturbed on appeal. (*Haralson* v. *Bank of America etc. Assn.,* 15 Cal. App. (2d) 620 [ 59 Pac. (2d) 885]; to the same effect, see *Duffy* v. *Duffy,* 71 Cal. App. 251 [235 Pac. 62]; *Donahue* v. *Sweeney,* 171 Cal. 388 [153 Pac. 708]; and *Blackledge* v. *McIntosh,* 85 Cal. App. 475 [259 Pac. 770].) It therefore becomes apparent that the testimony of Frances McGovern that, some time after the alleged delivery of the deed, Marcia Brooks had stated to her that she (Marcia Brooks) had not shown the deed to respondent, and the testimony of Emery Brooks in respect to the delivery of the deed to him, as above

recited, are squarely conflicting one with the other. Notwithstanding such conflict, however, the respondent contends that there was ample evidence to support the findings, and that in weighing the evidence the trial court did not err in rejecting the testimony of Frances McGovern to the effect that Marcia Brooks had told her she had not shown the deed to respondent,—and asserts in that regard that the improbability of the testimony of Frances McGovern, particularly that relating to the respondent and his former wife, is demonstrated by the fact that, although as testified to by respondent, he had previously been married and had children by the former marriage, the record is devoid of any evidence whatever that might or did show that the husband and wife herein did not live together in amicable relations up to the time of the death of Marcia Brooks in 1933. The merit of such contentions must be conceded. Furthermore, not only was there evidence to show that prior to the marriage the parties had agreed that Emery Brooks would be given one of the properties owned by Marcia Brooks in return for certain services he was to perform in and about the ranches, which services the evidence indicates he did perform, but the undisputed fact is established by the evidence, including the testimony of appellant Frances McGovern, that—in consonance with the prior agreement of Marcia Brooks to give one of her properties to said Emery Brooks—on the morning of August 1, 1929, his wife asked him which of her properties he preferred, and upon receiving his answer thereto she immediately took steps to have a deed to the property drawn in his favor, which deed was executed a few days later in the presence of her attorney. In view of those circumstances, the testimony of respondent that his wife delivered the deed to him almost immediately after its execution cannot be said to be inherently improbable.

The appellants also contend that, assuming there was manual delivery of the deed to respondent on August 5, 1929, there was no intention on the part of the grantor to *convey title* to the property, in that, after the alleged delivery of the deed, the acts of the grantor showed she had reserved the right of dominion and control over both the deed and the property.

In answer to such contention, it may be said that the mere retention by a grantor of the custody of a deed after delivery thereof is not necessarily inconsistent with an intention to

convey a present title to the property described in the deed. (*Stone* v. *Daily,* 181 Cal. 571; 581 [185 Pac. 665]; *Goodman* v. *Goodman,* 212 Cal. 730 [300 Pac. 449]; *King* v. *Fragley,* 19 Cal. App. 735 [127 Pac. 813].) Although, in the instant case, the deed was placed in a safety deposit box after the purported delivery thereof and, technically at least, thereafter it was in the joint possession of both Frances McGovern and Marcia Brooks, the respondent testified that it was placed therein with his consent, and for safe-keeping; and the trial court so found. The evidence showed no act on the part of Marcia Brooks thereafter that was inconsistent with the theory that she was keeping the deed for and on behalf of the respondent. It was shown that Marcia Brooks had permitted Frances McGovern, as executrix under her will, to have joint access to all the papers placed in the box in order that upon her death they would be available to said Frances McGovern. Whether it be considered that the deeds were left for safe-keeping with Marcia Brooks, or by her placed in the custody of Frances McGovern, as executrix of her will, or otherwise, would be immaterial, since, based upon substantial evidence to that effect, the trial court found that a valid delivery of the deed to respondent had taken place.

Neither can it be said there is merit in the contention of appellants that after the asserted delivery of the deed, certain acts of the grantor allegedly showing an exercise by her of dominion or control over the property conclusively negatived an intent on her part to have transferred title to the ranch by the delivery of the deed. In view of the many circumstances which showed an intention on the part of Marcia Brooks to part with title to the land, neither the fact that after the alleged delivery of the deed to Emery Brooks the taxes on the property continued to be assessed to her, nor that, personally, she rented the property and collected the rentals therefrom, and personally attended to other business matters relating to the property, is sufficient to overcome an inference of delivery of the deed and consequent transfer of title which was deducible from other evidence. In this regard, see: *Stewart* v. *Silva,* 192 Cal. 405, 410 [221 Pac. 191]; *Follmer* v. *Rohrer,* 158 Cal. 755 [112 Pac. 544]; and *Blackledge* v. *McIntosh,* 85 Cal. App. 475 [259 Pac. 770]. In the last two cases cited it was held that a showing of such circumstances merely raised a conflict in the evidence on the

question of the sufficiency of the delivery of the deed. In the instant case, also, there was evidence to the effect that, prior to their intermarriage, the husband and wife had agreed that the wife would handle all the business matters relating to the properties; and the evidence showed that the proceeds from the ranches were deposited in a joint bank account, and most of the expenses connected with the operation of the ranches were paid from that account. Considering the established relationship which existed between the husband and the wife, the fact that on occasion the wife may have used some of her separate funds for the payment of expenses connected with the property described in the deed to the husband, it cannot be said that, under the circumstances existing here, such fact indicated an intention on her part to have retained title to the said property.

Nor is there merit in the contention that the deed was intended to be a testamentary disposition of the property. The will was made at the same time the deeds were executed. It made no mention of the property disposed of by the deeds. In view of all the facts and circumstances shown to be present, it is evident that the deed here involved was made for the specific purpose of taking the real property therein described entirely out of the testamentary disposition.

Likewise, the contention of the appellants that the findings are inconsistent one with the other, or the others, may not be upheld. When read as a whole, the findings are not thus conflicting in any substantial particular, and are adequate support for the judgment.

Bearing in mind the ruling by this court with reference to the merits of the cause, which hereinbefore has been indicated, the final contention of the appellants to the effect that the finding that they were estopped from maintaining the present action is not supported by the evidence, becomes immaterial. However, in that regard, the record shows that after the death of Marcia Brooks the deed here concerned was delivered to respondent by Mr. Ford, in the presence of the executrix, Frances McGovern. Thereafter respondent recorded the deed. It was found that at all times during the pendency of the probate proceedings, the appellants were aware of the existence of the deed to respondent, and that they knew he was performing labor and making expenditures on the property in reliance on the effectiveness of the conveyance to him.

Nevertheless, during the probate proceedings neither they, nor any of them, asserted an adverse claim to the property, nor made any effort to exercise control over it. At the time the estate was closed, appellants accepted distribution of the personal property bequeathed to them by the terms of the will; but after distribution had been made, and at a time less than two weeks after the decree of distribution had been entered—for the first time, as residuary devisees under the will, they asserted a right to the ranch involved herein. The respondent contends that by the foregoing acts on the part of the appellants during the probate proceedings, he was deprived of the right to defend against an attack on the validity of his deed—which should have been made during that time, if at all—or to assert by the filing of a claim therefor, or otherwise, any other right against the estate which might have been then open to him. The trial court found in favor of the respondent on that issue. There was ample evidence to sustain the finding.

The judgment is affirmed.