[S. F. No. 17300. In Bank. Sept. 23, 1947.]

CALLIE HUTH, Appellant, v. PHIL C. KATZ, as
Administrator, etc., Respondent.

R. L. Husted for Appellant.

Henry F. Boyen, Frank J. Fontes and Robert E. Hatch for Respondent.

GIBSON, C. J.—George Wagner died intestate October 7, 1943, leaving a daughter and some nephews and nieces surviving him. When his safe-deposit box was opened after his death, it contained two instruments dated June 29, 1943, by which decedent purported to transfer most of the property he owned to plaintiff, who does not claim to be related to him. One of the documents was an unrecorded gift deed to a house and lot on York Street in San Francisco, where decedent was living at the time of his death; the other was an assignment of a promissory note secured by a deed of trust. Plaintiff instituted this action to quiet title to the property described in the two instruments, and she has appealed from a judgment against her.

The sole question is the sufficiency of the evidence, and in our opinion it supports the finding and conclusion of the trial court that there was no valid delivery of the deed and assignment to plaintiff and that decedent did not intend that any interest in the property should pass during his lifetime.

The evidence relied on by plaintiff to establish a delivery of the documents consists mainly of her testimony and that of F. R. Webb, a real estate agent who prepared the deed and assignment for decedent at his request.

Plaintiff testified that she had known decedent since she was nine years old, when her mother became housekeeper for his brother John. She lived with her mother in John's home and was known as "Callie Wagner" until she was married in 1932. Plaintiff called John "father," and decedent sometimes

referred to her as his "niece." Plaintiff saw decedent frequently, and for several years she went to his home twice a week to clean his house and do his washing and ironing. About a year before his death decedent told her that he intended to transfer his property to her and that Mr. Webb would "draw up the papers for it." On or about June 29, 1943, plaintiff went with decedent to Webb's office, where she met Webb for the first time. According to plaintiff, Webb handed the deed and the assignment to decedent, who in turn handed them to plaintiff saying, "They are all yours, Kid, they belong to you now."

Webb testified that he had known decedent for about 25 years and had handled some business transactions for him. In June, 1943, decedent called at Webb's office and requested him to prepare the necessary papers to transfer the York Street property and a certain note and trust deed to "Callie Wagner," whom he referred to as his "niece." Webb prepared the deed and assignment, and a few days later the instruments were signed and acknowledged by decedent in the presence of a notary public. When decedent informed Webb that he desired to make the transfer, Webb told him "that there must be delivery," and after the instruments were signed decedent said to Webb "I want delivery." The papers were left with Webb at his office, and a few days later, decedent returned with plaintiff. Webb testified that decedent gave the deed and assignment to plaintiff and said "Now it is all yours." The transaction took place in the presence of Webb and one F. A. Bloettler, both of whom signed under the notation "Witness to delivery" on the face of the deed.

Plaintiff testified that she took the deed and assignment home, but that about three weeks later she became alarmed because of a small fire in her home and decided that it was unsafe to keep the documents there. Decedent told her that she could put them in his safe-deposit box, and she accompanied him to the bank, where she placed them in the box. He alone had access to this box, but, according to plaintiff, decedent told her she might have the documents whenever she wanted them.

At the time the deed and assignment were signed, decedent was living at the real property in question and was renting a part of it. He continued to live there and collect the rentals until his death. The maker of the promissory note was not informed that it had been assigned to plaintiff, and

payments of principal and interest were made after the pur-
ported assignment, as before, to decedent's account at his bank.

Decedent made his living collecting and selling junk and
supported himself almost entirely from the income from that
business and the rented property. The value of the estate
does not clearly appear from the record, but apparently the
only real property decedent owned other than that covered
by the documents in question was a lot which apparently had
little value and had been sold for taxes. At the time of dece-
dent's death he had $255 in cash and a savings account of
$1,605.38. He was in good health in June, 1943, and was be-
tween 60 and 65 years of age when he died unexpectedly in
the following October.

■ A valid delivery of a deed depends upon whether the
grantor intended that it should be presently operative, and
a manual transfer is not conclusive evidence of such inten-
tion. (*Hotaling* v. *Hotaling*, 193 Cal. 368, 382-383 [224 P.
455, 56 A.L.R. 734]; *Dinneen* v. *Younger*, 57 Cal.App.2d 200,
204-205 [134 P.2d 323]; see *Longley* v. *Brooks*, 13 Cal.2d 754,
761 [92 P.2d 394].) ■ When the question at issue is whether
or not there has been a valid delivery, the possession of the
deed by the grantor and his exercise of dominion and control
of the property after manual transfer of the deed are facts
which may be considered in determining whether he intended
presently to pass title. (See *Longley* v. *Brooks*, 13 Cal.2d
754, 761-762 [92 P.2d 394]; *Williams* v. *Kidd*, 170 Cal.
631, 643-644 [151 P.1, Ann.Cas. 1916E 703]; *Dinneen* v.
*Younger*, 57 Cal.App.2d 200, 204-207 [134 P.2d 323].) In
the present case the fact that the deed and assignment were
found in decedent's safe-deposit box, to which he alone had
access, and the further facts that decedent continued to live
on the York Street property, collect the rentals, and have the
principal and interest of the note credited to his account, were
matters which the trial court could consider in determining
whether decedent intended the deed and assignment to operate
as a present transfer of the property described therein.

Plaintiff argues, however, that in addition to a manual
delivery there was testimony that decedent made statements
indicating an intent to pass title to plaintiff at that time, and
it is asserted that the trial court was bound to accept such
testimony as true because the witnesses plaintiff and Webb
were unimpeached. The trial court, however, was not re-
quired to believe that their testimony was true and accurate

in every particular. In passing on the credibility of witnesses and the weight to be given their testimony, the trier of fact is entitled to consider their interest in the result of the case, their motives, the manner in which they testify, and the contradictions appearing in the evidence. (*Hamilton* v. *Abadjian, ante,* pp. 49, 53 [179 P.2d 804]; *Tingey* v. *Houghton Co., ante,* pp. 97, 102 [179 P.2d 807]; *Hicks* v. *Reis,* 21 Cal.2d 654, 659-660 [134 P.2d 788]; *Blank* v. *Coffin,* 20 Cal. 2d 457, 461 [126 P.2d 868].) In weighing the testimony here the trial court no doubt took into consideration not only the conduct of decedent, indicating there was no intention that title should pass to plaintiff during his lifetime, but also the conduct of plaintiff, including the facts that she neither sought nor received reimbursement for the occupancy of the York Street property by decedent after the purported transfer, made no effort to collect the rentals or the payments of principal and interest on the note as they became due and asserted no right thereto before the death of decedent. In this connection it may be noted that although Webb testified that decedent handed the deed and assignment to plaintiff saying, "Now it is all yours," the record shows that payments on the note were thereafter made through Webb, who took them to the bank and had them credited to decedent's account.

 It is finally contended that certain remarks made by the trial judge before the case was submitted indicated that he believed the testimony of plaintiff and Webb as to what occurred when the manual transfer was made, and therefore that the judgment must be reversed. At the close of the trial, the judge in commenting informally on the evidence said he believed Webb was a man of high principles who would not do anything he knew to be irregular, and that he did not think plaintiff was a calculating woman or that she had persuaded decedent "to make these transfers against his will or inclination." He expressed a doubt, however, as to "whether or not at the time [decedent] made this transfer he had the intention of divesting himself of this property absolutely," saying "there is no doubt [decedent] retained control of the property, because he collected the rents afterward and the payments on the note continued to be credited to his account in the bank." These remarks are not inconsistent with the judgment and, furthermore, comments on the evidence made by a judge can in no way restrict his power to declare his final decision by filing findings of fact and conclusions of law.

610

(*Strudthoff* v. *Yates,* 28 Cal.2d 602, 615-616 [170 P.2d 873];
*Scholle* v. *Finnell,* 173 Cal. 372, 377 [159 P. 1179].)
 The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Schauer, J., Traynor, J.,
and Spence, J., concurred.