[Civ. No. 14324.  First Dist., Div. One.  Nov. 13, 1950.]

GEORGE CIRIMELE et al., Appellants, v. FLORENCE LUCCHESI et al., Respondents.

. J. C. Flannery for Appellants.

Frank J. Perry and John F. O'Sullivan for Respondents.

PETERS, P. J.—This case involves a dispute between brothers and sisters over the division of their father's property. The decedent was Francesco Cirimele. He had four children—George and Oliver Cirimele and Emma Carlomagno, who are plaintiffs, and aligned against their sister, Florence Lucchessi, and her three sons John, Frank and William, who are defendants. The three plaintiffs have not been on speaking terms with Florence for many years, and have not always been on friendly terms among themselves. However, they have joined forces in this action against Florence, who was the chief recipient of her father's property. The evidence is sharply conflicting. The trial court chose to believe Florence and her witnesses and to disbelieve plaintiffs and their witnesses. This was a proper function of the trial court.

The controversy involves two pieces of property, referred to in the record as the "Green Street" property and the "Pixley Street" property, formerly owned by Francesco, and both improved. In his lifetime Francesco had a deed prepared granting the Pixley Street property to Florence, and reserving to himself a life estate. Subsequently, and before his death, which occurred on November 27, 1946, this property was sold, both life tenant and remainderman signing the deed, and the proceeds turned over to Florence. Also during his lifetime Francesco had a deed prepared to the Green Street property naming his four children (the three plaintiffs and Florence) and the three children of Florence as equal grantees. This deed was not recorded until after the death of Francesco, but was in the possession of Florence prior to her father's death. The plaintiffs brought this action to quiet title to the Green Street property, claiming that each of the four children should receive a one-quarter share in that property, and that the three children of Florence should be excluded. Thus, as to the Green Street property, the fight is over whether plaintiffs receive a one-seventh interest or a one-quarter interest. The plaintiffs also sought to have Florence declared trustee of the proceeds from the sale of the Pixley Street property, and to have such proceeds divided equally among the four children. The trial court found all basic issues in favor of

Florence. It determined that the three plaintiffs, Florence, and her three children, were each entitled to a one-seventh interest in the Green Street property, and that Florence was entitled to the proceeds of the sale of the Pixley Street property. The three plaintiffs appeal, challenging both determinations.

The evidence most favorable to respondents is as follows: Francesco was born in Italy, came to the United States when he was about 30, became an American citizen, and died in San Francisco in 1946 at the age of 81. He first worked as a boot-black, and then operated a soft drink store. During these periods he acquired the two properties here involved. He retired in 1928, and thereafter lived on the rents from the properties, which totaled about $165 per month. The witnesses disagreed as to his ability to read, write, speak or understand the English language. Admittedly, he had no schooling in Italy or the United States. However, there is substantial evidence that he spoke and understood English. Attorney McKnew, who drafted the deeds and who spoke no Italian, testified that he conversed with Francesco in English, and that Francesco told McKnew what he wanted done with the property, and McKnew was able to explain to him the significance of the deeds, and the necessity and essentials of delivery. Except for rheumatism, Francesco was in good health up to the very day of his death.

Francesco's wife died in 1934. Thereafter he lived in an apartment in the Green Street property, and Florence, who was a widow, lived with her sons in another apartment on the same floor. Until about 1941 one of the plaintiff sons lived with his father, but after that date the father lived alone. The three plaintiffs were all married by 1941 and lived in separate establishments nearby. One of the plaintiffs, Emma Carlomagno, with her husband, operated a grocery store located in the Green Street property. After 1934, and until her father's death, Florence and her three children ate all of their meals with Francesco in Francesco's apartment, Florence doing all of the cooking. She also took care of her father's clothes and apartment. She paid for all of the food consumed, and also paid her father rent for her apartment. In spite of the fact that the three plaintiffs and Florence were not on speaking terms, Francesco remained on friendly terms with his four children and with all of his grandchildren. He seems to have been particularly fond of Florence's three sons, and in 1944 or 1945 transferred a $2,000 bank account from his

own name to a joint account with one of Florence's sons. The validity of this gift is not here challenged.

McKnew had been the attorney for Francesco and the children for many years. In 1934, just prior to the death of Francesco's wife, at Francesco's request, he drew up deeds to the properties from Francesco to his wife and vice versa. These deeds were delivered by the parties to each other in his office. After the death of Francesco's wife the deeds from her to Francesco were recorded. A few months after the death of his wife, Francesco requested McKnew to prepare deeds to both properties, naming his four children as equal grantees. Such a deed was drafted and McKnew instructed Francesco on the essentials of a valid delivery. There is no evidence as to what happened to this deed after it was handed to Francesco in McKnew's office.

In 1941, Francesco requested McKnew to draft a deed to the Pixley Street property naming Florence as the sole grantee, reserving the rents to himself for life. No mention was made of the 1934 deeds except that McKnew testified that he told Francesco to destroy those deeds. McKnew drew up a deed to the Pixley Street property naming Florence as remainderman and reserving a life estate in Francesco. This deed was recorded. Subsequently, the property was sold and the proceeds delivered to Florence. Although appellants in their briefs challenge the sufficiency of the evidence to support the findings that this deed and the proceeds from the subsequent sale were delivered to Florence, at the oral argument, in response to certain questions from the court, their counsel stipulated that the evidence supports the challenged findings in reference to the Pixley Street property, withdrew all claims in reference to this property and the proceeds from its sale, and agreed that this portion of the judgment should be affirmed.

Also in 1941, Francesco requested McKnew to draw up a deed to the Green Street property. He told McKnew that since Florence was a widow, and had been taking care of him since the death of his wife, and since Oliver and George were capable of earning their own living, and Emma was well provided for by her husband, he wanted his four children and the three children of Florence to receive this property in equal shares. McKnew advised Francesco that there should be no express reservation of a life estate in this deed because there were minors involved, and if the family should decide to sell, guardianship proceedings would be necessary. What

the reservation of a life estate had to do with possible guardianship proceedings, inasmuch as the three grandchildren were to be named grantees in any event, does not appear. At any rate, McKnew advised Francesco that such a reservation could be made orally. The deed to the Green Street property, naming the seven grantees, was prepared by McKnew, acknowledged by Francesco before a notary, and handed to Francesco in McKnew's office. McKnew testified that he advised Francesco of the necessity and essentials of a delivery, and told Francesco that he could deliver this deed to any one of the adult grantees. He did not know whether any of the deeds had been actually delivered.

Florence testified that she had nothing to do with the drawing of any of the deeds, and, in particular, knew nothing about the Green Street deed before it was drafted. It was executed on December 10, 1941. Sometime after that date, but in December, she testified, her father handed her the deed in a sealed envelope, and stated: ''Here is the deed for the . . . [Green Street] property. This is yours. This is for you and my son George and Oliver and Emma and also your three children. This is yours; you can do whatever you will with it. . . . Make sure after my death to have this deed recorded.'' She expressed her thanks, whereupon her father stated: ''Well, there is never too much that I could have done for you because you have been very good to me, also your children.'' He handed the deed to her while she was in the kitchen in his apartment, and she took it over to her apartment and placed it behind a holy picture where it remained until after his death. After his funeral, when members of the family were gathered in the deceased's flat, she brought the deed over, handed it to one of her relatives, and the deed was read in the presence of the group. This testimony is inconsistent with her testimony given when she was appointed administratrix of Francesco's estate, at which time she testified that she did not know what was in the envelope until after her father's death. However, she purported to explain this inconsistency, and insisted that her present testimony was correct. The sufficiency of her explanation and the attempt to reconcile the inconsistencies were matters for the trial court and cannot be considered on this appeal. There is no contradiction of her testimony that she had possession of the deed prior to the death of Francesco.

Florence also testified that after the delivery of the deed,

her father continued to collect and keep the rents from the property, and paid the fire insurance premiums on the property, the policies continuing to name Francesco as owner. She admitted that after 1941, at her father's orders, she had requested a rent increase from the O.P.A., and had listed her father as "Landlord and Owner." She also admitted that, after 1941, she had prepared and sent a notice to the Carlomagnos increasing their rent on the grocery store, and that such notice was signed by her father. It is admitted that Francesco, after 1941, continued to report the rentals on his income tax, and that, after 1941, and until Francesco's death, she continued to pay her father rent.

On this evidence the trial court found in favor of Florence on all major issues. Among other things, it found that at all times here pertinent Francesco was in good health; was not acting under the undue influence of any person; that Florence was not his confidential adviser; that Francesco understood what McKnew had told him; that there was a legal delivery of the Green Street deed to Florence; that the delivery was made in 1941 with intent to pass title then, and that Francesco did not then have a testamentary intent. Title was quieted in accordance with the terms of the deed.

Nearly half of appellants' opening brief is devoted to quoting from the transcript in an attempt to show inconsistencies in the testimony of Florence. There are inconsistencies, several of which were explained. The trial court believed that these were nothing more than the usual discrepancies that occur because of the inaccuracies of memory and the passage of time. At any rate, it elected to believe Florence's testimony and the explanations given at the trial. There being nothing inherently improbable or impossible in such testimony and explanations, this court is bound by the findings.

Appellants lay considerable stress on the acts of Francesco, enumerated above, subsequent to the claimed delivery of the deed, and urge that such actions are inconsistent with the finding of delivery. While evidence of such acts subsequent to the claimed delivery are admissible and should be considered in determining the intention of the claimed grantor, they do not negative, as a matter of law, the grantor's intention to make a delivery of the Green Street deed. They merely create a conflict in the evidence. Florence's testimony was positive on this issue. In view of the reservation of the life estate in the Pixley Street deed, and of McKnew's advice

that even though there was no express reservation of the rents or of a life estate in the Green Street deed such reservation could be made orally, Francesco may well have believed that, by telling his daughter not to record the deed until after his death, he had the right to collect the rents and perform the other acts above mentioned. The proper rule in such cases was thus expressed in *Longley* v. *Brooks,* 13 Cal.2d 754, 762 [92 P.2d 394] : ''In view of the many circumstances which showed an intention on the part of Marcia Brooks to part with title to the land, neither the fact that after the alleged delivery of the deed to Emery Brooks the taxes on the property continued to be assessed to her, nor that, personally she rented the property and collected the rentals therefrom, and personally attended to other business matters relating to the property, is sufficient to overcome an inference of delivery of the deed and consequent transfer of title which was deducible from other evidence.'' (See, also, *Blackledge* v. *McIntosh,* 85 Cal.App. 475, 480 [259 P. 770] ; *Stewart* v. *Silva,* 192 Cal. 405, 410 [221 P. 191] ; *Merritt* v. *Rey,* 104 Cal.App. 700, 706 [286 P. 510].)

█ Whether the deed was handed to Florence with testamentary intent or with intent to make a delivery was a question of fact. There being substantial evidence to support the finding of delivery, the finding cannot be disturbed. (*Hotaling* v. *Hotaling,* 193 Cal. 368, 382 [224 P. 455, 56 A.L.R. 734] ; *Hansen* v. *Hansen,* 82 Cal.App. 786, 792 [256 P. 290].)

Appellants argue that where the sole evidence of the delivery of a gift deed consists of oral declarations of a deceased grantor as testified to by the grantee, there must be ''strong'' evidence of delivery, and the testimony of the grantee received with ''caution.'' If it be assumed that this is the proper rule, the question still remains who determines whether evidence is ''strong'' and views it with ''caution''? Obviously, the trial court. It saw and heard the witnesses—we have not. It determined that the evidence was sufficient. That was within its powers. Moreover, much of Florence's testimony, except to the direct physical act of delivery, was corroborated by McKnew.

There is no evidence at all to support appellants' contention that Florence was the confidential adviser and trustee for her father. All of the evidence is the other way, and the trial court found in favor of respondents on this issue.

The evidence being conflicting on the vital issue of delivery,

and the trial court having resolved this conflict in favor of respondents, the judgment must be affirmed. (*Shaver* v. *Canfield*, 21 Cal.App.2d 734, 736 [70 P.2d 507].)

The judgment is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied December 13, 1950, and appellants' petition for a hearing by the Supreme Court was denied January 11, 1951.