[Civ. No. 30859. Second Dist., Div. Three. Nov. 15, 1968.]

FORTUNATA A. GONZALES, Plaintiff, Cross-defendant and Respondent, v. EMMETT H. GONZALES, Defendant, Cross-complainant and Appellant.

Samuel W. Blum and Samuel R. Leemon for Defendant, Cross-complainant and Appellant.

Painter, Templeton, Miller & Carlin and Louis Miller for Plaintiff, Cross-defendant and Respondent.

FORD, P. J.—The plaintiff Fortunata A. Gonzales sought to quiet title as against Emmett H. Gonzales and others as to an undivided one-half interest in a parcel of real property. Emmett H. Gonzales answered and, in addition, filed a cross-complaint in which he prayed for a decree quieting title in him. He has appealed from a judgment in favor of Fortunata A. Gonzales.

Sotero Gonzales was the father of the defendant Emmett H. Gonzales. At the time of Sotero's death he was married to the plaintiff Fortunata, that marriage having occurred after Sotero and Emmett had acquired title to the real property as joint tenants on or about March 15, 1949, while Sotero was a widower.

Findings of fact of particular significance on this appeal are as follows: 1. From March 15, 1949, to the month of July of 1960 Emmett and Sotero owned the real property as joint tenants. 2. During the month of July of 1960 that joint tenancy was terminated by the delivery to the plaintiff Fortunata of a deed dated November 15, 1950, "signed and executed by Sotero Gonzales in which Sotero Gonzales and plaintiff [Fortunata Gonzales] are designated [as] grantees as joint tenants." 3. Thereafter Sotero "confirmed said grant and delivery by giving to plaintiff the keys to the box where said deed was kept so that plaintiff had sole control of said deed." 4. From the date of delivery of said deed in July 1960 to the death of Sotero on January 26, 1963, plaintiff Fortunata and Sotero were the owners as joint tenants of an undivided one-half interest in the real property and the defendant Emmett was the owner of an undivided one-half interest therein. 5. The plaintiff Fortunata is the owner of an undivided one-half interest in the real property as the surviving joint tenant under the deed dated November 16, 1950.

For reasons which will be stated we hold that the findings of fact are sustained by substantial evidence and that the judgment must be affirmed.

In reviewing the record this court is governed by the law that when a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court is limited to the determination of whether there is any substantial evidence, contradicted or uncontradicted, which supports the finding of fact. Moreover, when two or more inferences can reasonably be drawn from the facts, a reviewing court is not empowered to substitute its deductions for those of the trial court. (*Green Trees Enter-*

*prises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d
782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].) ■ The
determination of the credibility of each witness and the
weight to be given to his or her testimony is within the exclu-
sive province of the trial judge as the trier of fact. (*Bruce* v.
*Ullery,* 58 Cal.2d 702, 710-711 [25 Cal.Rptr. 841, 375 P.2d
833].) ■ The trier of fact "properly may reject part of
the testimony of a witness, though not directly contradicted,
and combine the accepted portions with bits of testimony or
inferences from the testimony of other witnesses thus weaving
a cloth of truth out of selected available material." (*Nevarov*
v. *Caldwell,* 161 Cal.App.2d 762, 777 [327 P.2d 111].)

Evidence which supports the findings of fact will be noted.
Sotero and Fortunata were married on April 28, 1950. She
testified that on November 16, 1950, she went to the office of
Mr. Ochoa, a man in the real estate business, with her hus-
band at his request. There she saw a document entitled "Joint
Tenancy Deed"[1] and another document entitled "Amend-
ments to Instructions."[2] Mr. Ochoa said, "Mrs. Gonzales,
these papers. if Mr. Gonzales wants to sign it, these papers is
going to be to protect you with the property." She signed the
document entitled "Amendments to Instructions" after her
husband, Sotero, signed it. Sotero signed the deed. Mr. Ochoa

---

[1]The document received in evidence (exhibit 5) bears the date of
November 16, 1950. The body thereof is in part as follows (the type-
written portions inserted in the printed form being underlined herein):
"In consideration of ONE AND No/100 – – – Dollars, receipt of which
is hereby acknowledged, SOTERO GONZALES, a married man, who acquired
title as a widower and EMMETT H. GONZALES, a married man do hereby
GRANT to SOTERO GONZALES and FORTUNATA A. GONZALES, husband and
wife, as joint tenants, as to an undivided one-half interest and EMMETT
H. GONZALES AND [blank space] HUSBAND AND WIFE, as joint tenants,
as to an undivided one-half interest the real property in the City of Los
Angeles . . . ."
The acknowledgment contains the typewritten names "Sotero Gonzales
and Emmett H. Gonzales" but it does not bear the signature of any
notary public.

[2]This document (exhibit 6) was signed only by Sotero and Fortunata.
In the body thereof it is stated that the designated escrow company is
authorized and instructed to draw a deed to the property showing title
vested in "SOTERO GONZALES and FORTUNATA A. GONZALES, husband and
wife, as joint tenants, as to an undivided one-half interest, and EMMETT
H. GONZALES and [blank space] GONZALES, husband and wife, as joint
tenants, as to an undivided one-half interest." The document contains
further instructions, part thereof being as follows: "Upon receipt of this
signed deed record same. After recordation have recorder's office return
deed to Mr. and Mrs. Gonzales, c/o Mr. Ochoa, 113 N. Rowan, Los
Angeles 63, California."

said, "I am going to keep these papers over here to ask Emmett to come and sign this paper." The papers were left with Mr. Ochoa.

She next saw the documents at her home in the latter part of January of 1951. Sotero told her that he had gone to Mr. Ochoa's office and obtained the papers that day, that Emmett had not signed them, and that he was "going to put it right in the suitcase and . . . save it."[3] He put the papers in a steel box and then put the box in a suitcase.[4] She did not have a key to either the box or the suitcase. The keys were kept by Sotero. Fortunata further testified that she had the documents in her hands that day and recognized them.

The next discussion which Fortunata had with Sotero concerning the deed was in the latter part of July of 1960. At that time Sotero had been home from the hospital, where he had had an operation, for about 22 days. Sotero opened the suitcase. The papers were in the locked metal box which Sotero then opened. Sotero handed her the two documents (the deed and the "Amendments to Instructions"). He told her, "So this is your papers for your protection." Thereafter Sotero put the papers back in the box, placed the box in the suitcase and returned the suitcase to the closet. He did not give Fortunata the keys to the box and the suitcase. In January 1963, three weeks before Sotero died, he told her to go to the place where the keys were hidden and get them. That was the first time that she had had the keys in her hands. He told her to keep the keys and hide them. Fortunata further testified that when she first got the keys, Sotero told her where they were; they were in an envelope which was under the carpet in the living room; she had not seen them there previously. She gave the keys to Sotero and he gave them to her, telling her that she was the only one who was to have them. Thereafter she retained the keys. The box was not opened until the will was removed from it after Sotero's death.

On redirect examination Fortunata testified further with respect to the incident of July 1960, which occurred after Sotero returned from the hospital: "Well, he give to me the papers one day, taken from the box, and he said, 'I don't feel so good. I don't know what is going to happen to me, so I don't know how long I am going to live.' . . ." In response to a question by the court as to whether anything else was

---

[3] On cross-examination Fortunata testified that in December 1950, Sotero told her that Emmett did not want to sign the papers.

[4] On cross-examination Fortunata said that the "suitcase" was actually a metal trunk which had two locks.

said on that occasion, Fortunata testified: "No, just gave me the papers and that is all. 'I pass away, you have something to do something.' "

Mrs. Scanlan, called as a witness on behalf of the plaintiff, Fortunata, testified that she was "pretty confident" that the deed bearing the date of November 16, 1950 (see fn. 1 of this opinion) was prepared in the office of the escrow company of which she was part owner and vice president; she based her statement upon the fact that her company had a typewriter that had that kind of "type." The number on the instructions (exhibit 6) indicated a miscellaneous file in which matters of that nature were handled, namely "merely requests for the preparing of the document at somebody's request."

Emmett Gonzales testified that his father, Sotero, and Fortunata lived in one of the houses on the property while he lived in another. The third building contained three apartments which were rented.

As a rebuttal witness on behalf of the plaintiff, Sotero's brother Manuel P. Gonzales testified that in 1961 he had a conversation with Sotero in which he said he did not trust his children and he was going to leave a paper to Fortunata about the property. In a later conversation Sotero again said that he left her a paper. He never showed the paper to the witness. Sotero said that he had put it away with the rest of the papers.

■ The fact that Emmett did not sign the deed did not, as a matter of law, preclude an effective conveyance of Sotero's interest. The governing law has been stated as follows: "A deed in which several persons are named as grantors obviously is ineffective as against any such person who has not executed it. However, such an instrument is operative to convey the interest of any person named as grantor who does execute it, unless it is drawn with the obvious intention that it shall not take effect until executed by all the persons named as grantors, as in the case of a deed of partition." (15 Cal.Jur.2d, Deeds, § 74, p. 473; to the same effect, see 4 Tiffany on Real Property (3d ed. 1939) § 1023, p. 181.) ■ Whatever Sotero's intent may have been when the deed was originally drawn, he knew at the time when the deed was returned to him in January of 1951 that Emmett did not wish to execute the deed. In view of the circumstances existing when Sotero handed the deed to Fortunata in July of 1960, the trier of fact was warranted in drawing the inference that Sotero then intended the deed to be effective with respect

to his own interest in the property even though Emmett would not join in the deed.

A joint tenancy may exist as to an undivided interest in property. (*Estate of Galletto,* 75 Cal.App.2d 580, 585 [171 P.2d 152].) Assuming that there was an effective delivery of the deed, a matter hereinafter considered, the deed operated to place title in Sotero and Fortunata, as joint tenants, with respect to an undivided one-half interest in the property. Sotero was free to dispose of his interest without the consent of Emmett, the effect of such a disposition being the termination of the joint tenancy. (*Wilk* v. *Vencill,* 30 Cal.2d 104, 108-109 [180 P.2d 351] ; *Estate of Harris,* 9 Cal.2d 649, 659 [72 P.2d 873].) The contention of the appellant, Emmett, that Sotero could not effectively convey his share in the joint tenancy to himself and Fortunata as joint tenants because of the provisions of section 683 of the Civil Code[5] is untenable. Sotero was the sole owner of that share. (See *Lowenthal* v. *Kunz,* 104 Cal.App.2d 181, 184 [231 P.2d 62] ; see also *Blevins* v. *Palmer,* 172 Cal.App.2d 324, 326-329 [342 P.2d 356].) Witkin states: "C.C.683, the frequently amended governing statute, abandons the common law requirement of 'unity of time, title, interest and possession,' and makes unnecessary the use of an intermediate conveyance through a dummy to achieve unity of title. The sole technical requisite *is* an express declaration of joint tenancy in the instrument." (2 Witkin, Summary of Cal. Law (7th ed. 1960) Real Property § 104, p. 958; see *Blevins* v. *Palmer, supra,* 172 Cal. App.2d 324, 327-328.)

Turning to the question of delivery, the governing principle is stated in *Henneberry* v. *Henneberry,* 164 Cal. App.2d 125, at page 129 [330 P.2d 250] : "In addition to physical delivery, and an acceptance by the grantee, to constitute a valid delivery there must exist a mutual intention on the part of the parties, and particularly on the part of the grantor, to pass title to the property immediately. In other words, to be a valid delivery, the instrument must be meant by the grantor to be presently operative as a deed . . . .
Even if the document is manually delivered, but the

---

[5]Section 683 of the Civil Code is in pertinent part as follows: "A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or by transfer from a sole owner to himself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, . . . when expressly declared in the transfer to be a joint tenancy . . . ."

evidence shows that the parties or the grantor intended the document to become operative only upon death, the document is testamentary in character and void as a deed. . . . Fundamentally, the question of intent is one of fact to be determined by the trier of facts on all the evidence.'' ▮ The fact that Sotero continued to share in the rents and in the burdens inherent in ownership was not inconsistent with an intent that the joint tenancy deed should be immediately effective as of the date upon which it was handed to Fortunata. (See *Longley* v. *Brooks,* 13 Cal.2d 754, 762 [92 P.2d 394].) ▮ Moreover, a finding of effective delivery was not precluded by the fact that the deed was not acknowledged (*Osterberg* v. *Osterberg,* 68 Cal.App.2d 254, 262 [156 P.2d 46])[6] or by the fact that it was not recorded prior to Sotero's death. (*Blackburn* v. *Drake,* 211 Cal.App.2d 806, 814 [27 Cal. Rptr. 651].)[7] ▮ There was substantial support in the evidence, as hereinabove set forth, for the trial court's implied finding of fact that Sotero intended that the deed should be immediately effective when he handed it to Fortunata in July of 1960. Consequently, upon appellate review this court is not free to interfere with that finding of delivery. (*Longley* v. *Brooks, supra,* 13 Cal.2d 754, 760; *Cirimele* v. *Lucchesi,* 100 Cal.App.2d 371, 377 [223 P.2d 681].)[8]

In reaching the determination just stated this court has not overlooked the fact that after Sotero handed the deed to Fortunata it was returned to him and was placed in the box

---

[6]In *Osterberg* the court stated (68 Cal.App.2d, at page 262): ''In California the acknowledgment of a deed is not essential to its validity. The acknowledgment of a deed is merely evidentiary in character and is required only to entitle it to be recorded so as to render it competent evidence of the conveyance without further proof.''

[7]In *Blackburn* the significance of recordation was discussed as follows (211 Cal.App.2d, at page 814): ''While it is true that recordation is not essential to the validity of a deed and that the failure to record in and of itself does not vitiate delivery or the intent to make a present transfer [citations], the failure to record until after the death of the grantor is a circumstance for the court to consider with the other circumstances surrounding the transaction in ascertaining whether the grantor intended the deed to be presently operative.''

[8]The appellant, Emmett, argues that the ''alleged delivery was based solely upon the uncorroborated testimony of Fortunata—the weakest and most unsatisfactory type of evidence when the only person who could successfully contradict such testimony is dead.'' But, as stated in *Scherb* v. *Nelson,* 155 Cal.App.2d 184, at pages 186-187 [317 P.2d 164]: ''It is contended further that evidence of a statement and agreement of a person since deceased is weak evidence, and must be clear and convincing to be acceptable as sufficient proof of the making of the statement or agreement. But the argument is unavailing at this stage of the litigation. The rule is for the trier of fact.'' (See also *Cirimele* v. *Lucchesi, supra,* 100 Cal.App.2d 371, 377.)

which was then redeposited in the metal trunk, the keys to both receptacles being retained by Sotero until shortly before his death. A finding of effective delivery was not thereby precluded. As stated in *Goodman* v. *Goodman,* 212 Cal. 730, at page 732 [300 P. 449] : "The testimony of the grantee, however, was positively to the effect that the deed was handed to her by her husband upon the date of execution thereof and was only retained in the possession of the grantor thereafter for safekeeping. The situation thus presented is sufficiently covered by the almost identical case of *Stone* v. *Daily,* 181 Cal. 571, 581 [185 P. 665], wherein it was held that where the formality of the delivery of a deed with the intent of making the same an immediately effective conveyance has been gone through with by the parties thereto, the fact that after such delivery the grantor retains possession of the deed for purposes of its safekeeping does not affect the validity thereof as accomplishing a present transfer of title." Reasoning of the same nature is found in *Longley* v. *Brooks, supra,* 13 Cal.2d 754, at pages 761-762.

 In the present case the trier of fact was warranted in drawing the inference that the deed was returned to Sotero's box so that it would be safely kept for Fortunata and not because of any intention on the part of either Sotero or Fortunata that the deed should not be immediately effective. There being substantial support for that inference, this court is not free to interfere therewith.

Finally, the appellant, Emmett, argues that the judgment is prejudicially erroneous in that if the deed was effective for any purpose, Emmett as a named grantee therein was entitled to an undivided one-half interest in and to the property conveyed. But it is manifest that Sotero could not undertake to convey more than his own share or interest in the joint tenancy and that it was his intent to transfer the whole of that share or interest to himself and Fortunata as joint tenants. As stated in *Palos Verdes Corp.* v. *Housing Authority,* 202 Cal.App.2d 827, at page 835 [21 Cal.Rptr. 225] : "The primary object of the interpretation of a deed is to ascertain and give effect to the intention of the parties, especially that of the grantor, as it existed at the time of the execution of the instrument." The contention is devoid of merit.

The judgment is affirmed.

Cobey, J., and Moss, J., concurred.